Charles A. LOGAN, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2013–CA–000951–MR.

Court of Appeals of Kentucky.

Oct. 17, 2014.

Charles A. Logan, Pro Se, Sandy Hook, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Gregory C. Fuchs, Assistant Attorney General, Frankfort, KY, for appellee.

Before CAPERTON, LAMBERT, and TAYLOR, Judges.

## OPINION

LAMBERT, Judge:

Charles Logan appeals from the Carter Circuit Court's order denying his Kentucky Rules of Criminal Procedure (RCr) 11.42 motion for post-conviction relief. After careful review of the record, we affirm the trial court's order denying relief.

Logan was indicted by the Carter County Grand Jury and was charged with the murder of Bobby Roy Gilbert and the attempted murder of Kenny Crockett. These charges arose from an argument between Logan and Gilbert, which commenced at a motorcycle rally in Owingsville, Kentucky, on May 24, 2001. Somewhere during the visit at the rally, Logan and Gilbert began to argue. The argument escalated to the point where Gilbert drew a knife on Logan. Crockett and Roseann Jackson, Logan's girlfriend, intervened, and Ms. Jackson struck Gilbert with a vodka bottle.

Logan and Ms. Jackson then left the rally, but on the morning of May 25, 2001, they drove to Gilbert's home in Olive Hill, Kentucky on a four-wheeler. Ms. Jackson testified that Logan had a pistol and a rifle with him when they left. Logan alleged

that he wanted to settle the bad blood between himself and Gilbert and end the argument. However, Gilbert's wife, Brenda, told Logan that Gilbert was not home yet. Logan and Ms. Jackson then left Gilbert's home and went to the home of David Abrams. The evidence at trial indicated that Gilbert, Crockett, and Johnny Huntsman were returning from the motorcycle rally when Logan and Ms. Jackson showed up at Abrams' home.

Gilbert and Crockett exited the RV in front of Abrams' house while Huntsman remained in the vehicle. Logan got off the porch and talked with Gilbert and Crockett. Abrams and Ms. Jackson watched from the porch, and Abrams' girlfriend, Michelle Masters, watched from inside the house. The discussion became heated, and Logan saw Gilbert reaching behind his back waistband. Believing that Gilbert was going to pull a knife on him again, as he had done at the rally, Logan alleged he raised his gun, a .380 handgun, and pulled the trigger, hitting Gilbert. Crockett and Huntsman dragged Gilbert into the RV, and rather than heading for an emergency room, they headed for Gilbert's home. Gilbert was eventually airlifted from a local park, but subsequently died from a gunshot wound. The evidence established that Gilbert was killed with a 9mm bullet.

After the shooting, Logan and Ms. Jackson left Abrams' residence on Logan's four-wheeler. Logan dropped Ms. Jackson off and drove alone into the woods. He came across Doug Estepp and allegedly told him he had killed a man in self-defense. Logan then continued on through the woods, and at some point obtained a ride from Helen Brown. When Ms. Brown and Logan arrived at Logan's home, the state police were waiting. Logan turned himself in without incident and handed over the gun in his possession, a .380 handgun.

The case was submitted to the jury on instructions for intentional and wanton murder as well as lesser-included offenses of attempted murder with self-protection and intoxication instructions. Logan was found guilty of the wanton murder of Gilbert and not guilty of the attempted murder of Crockett, and the jury recommended a twenty-five year sentence.

On direct appeal to the Supreme Court of Kentucky, Logan raised two issues as to whether the trial court erred in denying his motion to exclude his statement given to the state police as involuntary and whether it was error for the trial court to allow the Commonwealth to admit a statement made by Michelle Masters. The Supreme Court affirmed Logan's conviction in an opinion rendered on November 18, 2004, finding no error in the admission of Logan's statement. It held that while Ms. Masters' statement was improperly admitted into evidence, it was harmless error.

Within a year, Logan filed a *pro se* motion to vacate, alleging that his trial counsel was ineffective for opening the door to the admission of the hearsay statement of Ms. Masters, in not requiring the Commonwealth to prove that he did not act under the influence of extreme emotional disturbance, and in not proffering an alternative perpetrator defense. Later, appointed counsel supplemented the motion and raised the additional claim that trial counsel failed to interview two witnesses. In addition, Logan asserted that information concerning alleged improper contact between a juror, identified as Dorothy Rice, and Crockett, had come to light.

The court entered an order granting the Commonwealth time to respond. In June 2009, Logan retained private counsel to represent him. He further supplemented the existing motion by adding an argument concerning the statement of Ms. Masters, asserting that same constituted a violation

of Logan's right to confrontation. The court granted a hearing, but the hearing was continued on several occasions. The Commonwealth Attorney resigned to accept a judicial appointment, resulting in further delay. A hearing was finally conducted, and the trial court heard the testimony of several witnesses.

However, the testimony presented pertained only to the issue of the alleged improper contact between juror Rice and Crockett. Counsel for the defendant did not present any other evidence on the remaining issues. Despite the fact that the testimony concerned what was told to trial counsel about this alleged improper contact between a juror and a witness/victim, trial counsel was not called to testify at the hearing.

At the hearing, Logan's sister, Marcella Clay, testified that she saw juror Rice at the back of the courthouse leaving in a vehicle driven by Crockett after the trial. The testimony reflected that Sheriff Kevin "Mooch" McDavid allowed Logan to meet with his family outside the courthouse after the trial to say goodbye before he was taken away. Some of Logan's other relatives testified similarly. However, juror Rice denied any contact with Crockett and denied getting a ride home from Crockett at the trial or at any time. Sheriff McDavid did not recall Crockett coming by the jail that night, and he testified that he would remember seeing contact between a witness and a juror. Neither of the other two jurors subpoenaed recalled seeing any such contact between juror Rice and Crockett.

Upon conclusion of the hearing, the trial court issued a lengthy opinion denying Logan's RCr 11.42 motion. This appeal now follows.

■ On appeal, Logan first argues that the trial court's finding that there was no improper juror contact is clearly errone-ous. In support of this argument, Logan contends that he proved that there was improper contact between juror Rice and the state's witness, Crockett. Logan alleges that despite knowing about this contact, his trial counsel did not present the evidence to the trial court. Logan also argues that the trial court gave more weight than appropriate to the testimony of disinterested witnesses such as juror Adams, juror Mullins, a sheriff's employee, and former Sheriff McDavid.

Logan contends that the Sheriff was not truly disinterested because he was a leading law enforcement official in the community. Logan argues that it would be "blinking at reality" to believe that the sheriff of a rural county is not interested in a death that occurs in the county and the resulting trial. Further, Logan contends that Sheriff McDavid had something to hide because he had improperly allowed Logan to visit with his family before leaving the courthouse. Logan contends that while this was a nice gesture, it was inappropriate for McDavid to do so without other law enforcement present to protect the scene. Logan argues that without Sheriff McDavid's testimony, there was inadequate evidence to support the trial court's findings that the events alleged in Logan's motion did not occur.

When an evidentiary hearing is held in an RCr 11.42 proceeding, the court reviews the trial court's findings of fact under the clearly erroneous standard set forth in Kentucky Rules of Civil Procedure (CR) 52.01. *Saylor v. Commonwealth,* 357 S.W.3d 567, 570–71 (Ky.App.2012). Findings of fact are clearly erroneous if they are not supported by substantial evidence. *Id.,* citing *Black Motor Co. v. Greene,* 385 S.W.2d 954, 956 (Ky.1964). Even though claims of ineffective assistance of counsel are subject to *de novo* review, a reviewing

court should defer to the determination of facts made by the trial judge. *McQueen v. Commonwealth,* 721 S.W.2d 694, 698 (Ky. 1986).

Also, this Court has previously noted:

The burden of proof [is] upon the appellant to show that he was not adequately represented by appointed counsel.' *Jordan v. Commonwealth,* Ky., 445 S.W.2d 878, 879 (1969). In order to establish counsel's assistance was so prejudicially ineffective as to require reversal, the appellant needs to satisfy a two-part test: (1) " 'that counsel's representation fell below an objective standard of reasonableness ... [and, (2)] there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different.' " *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting *Strickland v. Washington,* 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). *Accord Gall v. Commonwealth,* Ky., 702 S.W.2d 37 (1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986).

*Osborne v. Commonwealth,* 992 S.W.2d 860, 863 (Ky.App.1998).

In the instant case, a review of the record indicates that after a hearing, the trial court found that the evidence did not support the notion of any improper contact between a juror and a witness. The trial court noted that juror Rice's testimony was that she knew Crockett in passing and from the community, but not on a personal basis. She denied getting a ride with Crockett to her home after the trial had concluded. While acknowledging that she did not drive, Ms. Rice testified that Cindy at the Sheriff's Department gave her a ride during the trial. If Cindy was busy, another deputy gave her a ride.

The record indicates that the trial court considered all the testimony of Logan's family as well as Sheriff McDavid, and it detailed all of this testimony in its order. The court stated clearly that there was a division in the testimony, and thus it would look to the statements of disinterested witnesses and not just at those of Logan's family. None of the disinterested witnesses recalled seeing any contact between Ms. Rice and Crockett. Furthermore, despite Logan's claim that his trial counsel was informed of the contact, Logan did not present testimony from trial counsel at the hearing on this issue. Thus, the court concluded that no inappropriate contact had occurred.

However, the court further found that even if such contact had occurred, the only evidence even presented was that it occurred after the trial and penalty phase had concluded. The court concluded that Logan's assertion that Ms. Rice concealed a relationship with Crockett during *voir dire* was simply illogical given the totality of the circumstances. Logan was acquitted of attempting to kill Crockett. The verdict was unanimous, which necessarily required Ms. Rice to join in the verdict. The court found the fact that Ms. Rice voted to acquit Logan of attempting to kill Crockett as evidence dispelling any notion that Ms. Rice had some sort of prejudicial relationship with Crockett.

We agree that the evidence was conflicting as to whether or not Crockett and Ms. Rice had any contact after the trial had concluded. Thus, the trial court was in the best position to take into consideration all the evidence and believe the testimony of disinterested witnesses over interested witnesses. The court's findings of fact are supported by the record and are not clearly erroneous. Given the fact that the trial had concluded and Ms. Rice disclosed that she knew Crockett during *voir dire,* we do

not see any harm that resulted to Logan even if such contact did occur. Logan was acquitted of the charges concerning Crockett, and thus there is no evidence of juror bias. We find no error.

▮ Logan next argues that the trial court's conclusion that there was no prejudice resulting from the introduction of the hearsay statement · of Ms. Masters was clearly erroneous. A bit of background information is needed to fully understand Logan's claims on appeal. At trial, during cross-examination of Detective Coles, Logan's defense attorneys questioned the detective about Ms. Masters' statement regarding Logan's gun ownership. The detective answered the question; however, Ms. Masters' statement was not presented during cross-examination.

On redirect examination, the trial court permitted the prosecution to read Ms. Masters' statement to the jury. The court reasoned that defense counsel opened the door by asking Detective Coles about the statement. On direct appeal, the Supreme Court held that the trial court improperly admitted Ms. Masters' statement, which amounted to hearsay testimony. In particular, the Court stated, "[w]hile Appellant may have 'opened the door' in the course of his cross-examination, it was not a cathedral door authorizing the introduction of unrelated and highly prejudicial hearsay evidence." *Logan v. Commonwealth*, 2004 WL 2624065, *4 (2002–SC–0942–MR, November 18, 2004). However, the Court went on to conclude that the introduction of this hearsay testimony was harmless error, stating:

Notwithstanding our view that the trial court abused its discretion with respect to the Masters statement, Logan still has another hurdle to surpass to obtain the relief he seeks here. To obtain relief, he must also show that even

if the evidence had been excluded there is a substantial possibility that the outcome would have been different; that admission of the evidence affected the outcome.

From the evidence presented at trial, without the Masters statement, this Court is convinced the outcome would not have been different. The evidence was overwhelming that Logan shot and killed Gilbert in broad daylight in front of four people who knew both the victim and Logan. Abrams testified that he saw the argument, heard a gunshot, and saw Logan wielding the only gun. Huntsman testified that he saw Logan shoot Gilbert. And Crockett testified that he saw Logan shoot Gilbert. Moreover, there was evidence of bad blood between Logan and Gilbert, and Logan made a threat to harm Gilbert to Gilbert's wife. With the evidence in this state, RCr 9.24 commands disregard of the hearsay error. It was harmless beyond a reasonable doubt.

*Logan*, 2004 WL 2624065 at *4 (footnotes omitted).

On appeal to this Court, Logan presents this argument as a claim of ineffective assistance of counsel and alleges that counsel was ineffective in opening the door for the admission of Ms. Masters' statement. However, in making this argument, Logan ignores the fact that the Supreme Court did not find that the statement was properly admitted, but instead found that its admission was harmless error. Counsel then was not ineffective because there was no prejudice. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Furthermore, the testimony Logan refers to was Ms. Masters' statement that she believed Logan intended to kill Gilbert. However, the jury did not find Logan guilty of intentionally killing Gilbert.

Instead, the jury convicted Logan of wanton murder, which does not require any finding that he acted intentionally. Without the claimed hearsay testimony, the result would not have been any different. Simply put, no prejudice resulted from the introduction of Ms. Masters' statement, and a claim for ineffective assistance of counsel in this regard fails.

Logan next argues that defense counsel was ineffective by failing to investigate and present witnesses to support his defense. Logan argues that two witnesses, Doug Estepp and John McGuire, gave statements to the state police as part of their investigation. Logan contends that the prosecutor gave notice of these statements during discovery; however, Logan's attorneys never took the time to review the statements or even interview the witnesses.

■ In particular, Logan claims that in his statement, Mr. Estepp said that Logan had claimed the shooting was self-defense and it was either "him or me." Logan argues that this statement would have supported his claim that he acted in self-defense, and thus it was error for his defense counsel not to investigate the witness and present such testimony at trial.

■ Logan claims that Mr. McGuire's statement reflected that he had encountered Logan's four-wheeler in the woods and that "some fool" was driving the four-wheeler. Logan argues that this would have been evidence his counsel could have presented in support of his intoxication defense and that it was ineffective assistance of counsel for defense counsel not to present the testimony.

A review of the record indicates that Logan did not present any evidence at the hearing on his RCr 11.42 motion supporting his claims of ineffective assistance of counsel with regard to counsel's failure to present the statements of Mr. Estepp and Mr. McGuire. In its order, the trial court noted that it appeared that defense counsel failed to interview the two potential witnesses. However, the trial court found that even if the omission of additional evidence was error, Logan also had to show that the result would have been different absent the error. "Ineffective assistance of counsel requires a showing that defense counsel's performance was deficient and that the defendant was prejudiced by that deficiency." *Commonwealth v. Davis*, 14 S.W.3d 9, 11 (Ky.1999).

The trial court found that had Mr. Estepp's testimony been presented, it would have again pointed to Logan as the shooter, which he was by his own admission. This claim is contradictory to Logan's other claim that he was "set up" by Crockett, who was the real shooter. The only other evidence Mr. Estepp's testimony would have presented was that Logan acted in self-defense. However, the trial court found that this evidence was cumulative, in light of the fact that Ms. Jackson's testimony was that Logan told her immediately after the shooting that he acted in self defense. Thus, immediately after the shooting, the evidence of Logan's state of mind and his alleged belief for self-protection was provided through Ms. Jackson's testimony. As such, Logan's contention that Mr. Estepp was essential to provide evidence of Logan's state of mind is not well-founded, for his statement to Ms. Jackson was closer in time to the actual shooting. Finally, Ms. Jackson was not the only other witness to testify that Logan claimed he thought that Crockett and Gilbert were going to harm him. Logan also told his mother that he only meant to shoot over Gilbert's head to scare him because he thought that Gilbert was drawing a knife on him when he put his hand behind his back.

We agree with the trial court that the inclusion of Mr. Estepp's statements as evidence would not have resulted in a different outcome, as the evidence that Logan claimed to be acting in self-defense was already in the record, through his own statements and through testimony of several other witnesses. Thus, defense counsel's failure to present Mr. Estepp's testimony was not prejudicial.

The same is true of the testimony Logan alleges Mr. McGuire would have provided to the court. Logan alleges that Mr. McGuire's testimony that he saw "some fool" riding a four wheeler through the woods would support his claim that he was intoxicated at the time he shot and killed Gilbert. The trial court found that Mr. McGuire's alleged statements did not give direct support to Logan's claim of intoxication, because the statement could have been made with reference to how the person driving the four-wheeler was operating the vehicle, not that they were necessarily intoxicated. The court held that even if the statement supported the intoxication theory, evidence regarding Logan's level of intoxication was before the court through the testimony of many other witnesses, namely Logan's mother, Ms. Brown, Mr. Abrams, and Ms. Jackson. Thus, the court found that there were other witnesses that presented testimony as to Logan's state of mind and level of intoxication, and Mr. McGuire's testimony was not necessary.

We agree with the trial court that the evidence of record indicated that Mr. McGuire's testimony was not clearly relevant, given that it did not specifically give any inference as to how intoxicated Logan was around the time of the shooting. Thus, defense counsel's failure to interview the witnesses, if error, was not prejudicial. Absent the error, it is not clear that the

outcome of Logan's trial would have been any different.

Most importantly, the jury was instructed on intoxication as a defense. "While intoxication may be a defense in a criminal case, it is such only if there is evidence sufficient to support a doubt that the defendant knew what he was doing. . . . [I]n order to justify such an instruction[,] there must be evidence not only that the defendant was drunk, but that he was so drunk that he did not know what he was doing." *Stanford v. Commonwealth,* 793 S.W.2d 112, 117–18 (Ky. 1990) (citing *Meadows v. Commonwealth,* 550 S.W.2d 511 (Ky.1977)). In the instant case, notwithstanding the evidence that Logan likely did not meet this standard, the trial court nonetheless gave the intoxication instruction and submitted the issue to the jury. Obviously, the jury did not conclude that Logan was so drunk that he did not know what he was doing. Logan has not established that a different result would occur with the addition of Mr. McGuire's testimony, and thus no prejudice occurred. The trial court properly held that there was no ineffective assistance of counsel in this regard.

Logan next argues that counsel rendered ineffective assistance by failing to emphasize exculpatory evidence. Logan contends that when he was arrested, the only weapon he had in his possession was his .380 caliber pistol. The police found one spent .380 shell casing and an unspent .380 bullet at the scene. The evidence was that the police also found a shell casing fired from a 9mm pistol, which was stamped 9mm. The evidence showed that Gilbert was hit and killed by a 9mm bullet, which could not have been fired from a .380 caliber pistol.

Logan contends that the investigation revealed that the .380 casing and shell were found inside a fence at Abram's

house where Logan was located. The 9mm shell was found outside this fenced area. Logan argues that this is where Gilbert and Crockett were located at the time of the shooting. Logan argues that this evidence shows that someone other than himself shot Gilbert. Logan contends that his attorneys had ample evidence they could have presented which would have supported an alternative perpetrator theory.

A review of the record indicates that defense counsel did present this theory of the case to the jury. The record is clear that the jury was presented with information regarding the various firearms at issue. Information was presented that the only firearm recovered from Logan by the Kentucky State Police was a .380 handgun. Dwight Deskins testified that the bullet which struck and killed Gilbert was not fired from a .380 handgun. Mr. Deskins stated that the bullet in the victim was a 9mm. Thus, he concluded, without question, another gun other than the .380 recovered from Logan fired the round found in the victim. This is the exact testimony Logan now complains was not presented to the jury.

In addition, the record reflects that Logan's counsel also asked questions about a gun given by Gilbert's wife, Brenda, to another man to clean. Counsel asked questions about the relationship between Crockett and Brenda. Counsel also referenced and inquired about conversations between Crockett and Gilbert concerning something being locked up in a safe. Finally, counsel addressed the fact that Crockett did not go to the hospital with Gilbert after the shooting.

The record clearly reflects that Logan's counsel did explore an alternative perpetrator theory, and such theory was presented to the jury to attempt to create reasonable doubt. The trial court found that the extent to which defense counsel pursued this theory was a matter of trial strategy and did not amount to ineffective assistance of counsel. We hold that Logan's allegations are easily refuted by the record, and thus the trial court did not err in denying post-conviction relief.

Finding no reversible error, we affirm the Carter Circuit Court's April 9, 2013, order denying Logan's RCr 11.42 motion.

ALL CONCUR.