RENDERED:  OCTOBER 1, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0195-MR

JEREMY BROWNING                                                        APPELLANT

v.
APPEAL FROM BULLITT CIRCUIT COURT
HONORABLE RODNEY BURRESS, JUDGE
ACTION NO. 10-CR-00478

COMMONWEALTH OF KENTUCKY                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; GOODWINE AND MAZE, JUDGES.

CLAYTON, CHIEF JUDGE:  Jeremy Browning appeals from a Bullitt Circuit

Court order denying his motion for relief under Kentucky Rules of Criminal

Procedure (RCr) 11.42.  Browning argues that he was denied his Sixth Amendment

right to effective trial counsel.  On April 19, 2021, the Commonwealth filed a

motion to hold Browning's appeal in abeyance pending finality in *Ford v.*

*Commonwealth*, No. 2019-SC-0538-DG, 2021 WL 3828505 (Ky. Aug. 26, 2021).

The motion was granted by order of this Court on May 5, 2021. On September 20,

2021, the Commonwealth notified the Court that the opinion in *Ford* had become

final and moved to return Browning's appeal to the active docket. This Court

accordingly returned the case to our active docket. Having reviewed the record

and applicable law, we affirm the order of the trial court.

Browning was convicted by a jury of two counts of unlawful

transaction with a minor in the first degree, sexual abuse in the first degree, incest,

and being a persistent felony offender in the second degree. He received a total

sentence of seventy years. His convictions were affirmed on direct appeal.

*Browning v. Commonwealth*, No. 2012-SC-000422-MR, 2013 WL 4680486 (Ky.

Aug. 29, 2013). The opinion of the Kentucky Supreme Court set forth the

underlying facts of the case:

> Browning and his wife, Nicole, lived with their four children and Nicole's parents in a double-wide trailer. At some point in 2010, Nicole became suspicious that the relationship between Browning and their pre-teenage daughter, G.B., had become inappropriate. To determine if anything inappropriate was taking place, Nicole purchased a digital audio recorder, which she placed under the couple's bed.
>
> On October 19, 2010, Nicole left the house with three of the couple's children, leaving Browning and G.B. behind. Before leaving, Nicole turned on the audio recorder. At some point after she returned home, Nicole

> retrieved the recorder and listened to what had been recorded.
>
> On October 22, 2010, Nicole took the recording, which she believed contained evidence of Browning's inappropriate behavior, and G.B. to the Bullitt County Sheriff's office. Officers listened to the recording and two social workers interviewed G.B. During the course of the interview, G.B. stated that she and Browning had engaged in oral sex on a number of occasions and that Browning had unsuccessfully tried to penetrate her vagina twice. Based on this information, sheriff's deputies arrested Browning[.]

*Id*. at *1.

Following his arrest, Browning signed a waiver of his *Miranda* rights,[1] spoke with police officers at length, and confessed. *Id*. at *6. He thereafter gave a recorded statement to the police in which he admitted that he engaged in oral sex with G.B. on a number of occasions, fondled her, and attempted to penetrate her vagina with his penis. *Id*.

A trial was held from October 6 to 7, 2011. Following a series of disputes over the timeliness and completeness of the discovery provided to the defense by the Commonwealth, the court declared a mistrial. Browning's counsel filed a motion to suppress his recorded statement to police which the trial court denied. A new trial was held from March 13 to 15, 2012. The evidence introduced

---

[1] Under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), police officers are required "to advise suspects of their rights against self-incrimination and to an attorney prior to subjecting them to custodial interrogation." *Greene v. Commonwealth*, 244 S.W.3d 128, 135 (Ky. App. 2008).

by the Commonwealth included the audio recording that Nicole had secretly made of Browning and G.B., and G.B.'s testimony identifying the sounds on that recording as those of her father abusing her. The Commonwealth also introduced the recorded portion of Browning's self-incriminating statement to the police. The jury convicted Browning of all charges.

Browning filed his RCr 11.42 motion to vacate, correct, or set aside his conviction and sentence on December 10, 2016, raising multiple claims of ineffective assistance of counsel. At the hearing, Browning's trial counsel testified that the Commonwealth offered Browning a twenty-year sentence in exchange for a guilty plea which she strongly advised him to accept, based on her experience of Bullitt County juries, and warned him that he was facing a maximum sentence of seventy years. She also sent a letter to be placed in his file stating that he had insisted on going to trial against her advice. The trial court entered an order denying the motion and this appeal followed. Further facts will be discussed below as necessary.

The test for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). It has two components which must both be met. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." *Id*. "Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*.

When, as in this case, an evidentiary hearing is held, we review "the trial court's findings of fact under the clearly erroneous standard set forth in Kentucky Rules of Civil Procedure (CR) 52.01. Findings of fact are clearly erroneous if they are not supported by substantial evidence. Even though claims of ineffective assistance of counsel are subject to *de novo* review, a reviewing court should defer to the determination of facts made by the trial judge." *Logan v. Commonwealth*, 446 S.W.3d 655, 658-59 (Ky. App. 2014) (citations omitted).

Browning's first argument concerns the self-incriminating recorded statement he made to the police following his arrest. Browning's counsel filed a motion to suppress the statement immediately prior to his second trial. The motion argued that Browning's statement was coerced, as evidenced by his testimony in the first trial that he was choked by the police. In opposition, the Commonwealth cited to testimony of the police officers at the first trial that this had not occurred. In ruling on the suppression motion, the trial court asked the parties whether they had any another evidence beyond the testimony at the first trial. "Both parties agreed that they had no additional evidence. The trial judge stated that he had the

exhibits from the first trial and that he had heard the testimony. Based on that evidence, he concluded that Browning's statement was knowing, voluntary, and intelligent; therefore, he denied Browning's motion to suppress." *Browning*, 2013 WL 4680486, at *4.

The Kentucky Supreme Court opinion contains the following summary of Browning's testimony and the testimony of the police officers:

> Browning testified at both trials that he was arrested at approximately 2:30 p.m. Following his arrest, Browning was transported to the sheriff's office where he was handcuffed to a chair in a holding cell. After what seemed like several hours, Browning was questioned by Detective Cook and Deputy Fowler. During the questioning, Deputy Fowler stood behind Browning and choked him whenever he denied having any inappropriate contact with G.B. Several times Deputy Fowler choked Browning to the point of unconsciousness. In order to stop this abuse, Browning signed a waiver of his *Miranda* rights and agreed to give a videotaped statement. Prior to the statement, Detective Cook coached Browning about what he should say.
>
> After he gave his statement, Browning was taken to the jail. Before he was taken to a cell, he signed a jail intake form, indicating that he had not recently fainted or been unconscious and that he did not have any injuries. Browning testified that he did not read the document, that no one explained it to him, and that he was not aware of its contents when he signed it. Finally, Browning testified that he did not have any visible bruises or marks when he was admitted to the jail.

*Id.* at *3.

The police witnesses testified as follows:

-6-

During both trials, Deputy Jailer Farmer testified that he handled the intake procedure the night Browning was admitted to the jail. As part of the intake procedure, Deputy Jailer Farmer reviewed several forms with Browning and obtained his signature. Deputy Jailer Farmer did not notice any physical injuries on Browning; however, Deputy Jailer Farmer could not recall if Browning said whether he needed to see a physician. The intake form, which the court admitted into evidence, indicates that Browning denied having any head injuries or having fainted.

. . .

Sheriff Tinnel, the former Bullitt County Sheriff, testified at the first trial that he and Detective Cook conducted a brief interview of Browning in the sheriff's office. The purpose of that interview, which was not recorded, was to get Browning "comfortable" and to explain his rights to him. Browning signed a waiver of his rights in Sheriff Tinnel's office.

. . .

Deputy Fowler, a deputy in the sheriff's department, testified at both trials that he arrested Browning and took him to the sheriff's department. Deputy Fowler stayed with Browning until Detective Cook and/or Sheriff Tinnel took control of Browning. Deputy Fowler denied choking or otherwise assaulting Browning. Furthermore, Deputy Fowler testified that he did not place Browning in a holding cell and that he had not been in a holding cell with Browning.
. . .

Detective Cook testified at the second trial that he interviewed Browning in Sheriff Tinnel's office and that he later obtained a videotaped statement from Browning. Detective Cook did not choke or direct anyone to choke

Browning. Furthermore, he stated that he did not tell Browning what to say during the recorded statement.

*Id.* at *4.

On direct appeal, Browning argued that the trial court should have conducted a suppression hearing following the first trial and that his recorded statement was involuntary as a result of police coercion. These claims were reviewed and rejected by the Kentucky Supreme Court. *Id.* at *4-5. In assessing the voluntariness of Browning's confession and his allegations that he had been choked unconscious so many times that he admitted to doing whatever the deputies said he had done, the Supreme Court affirmed the trial court's factual finding that his statement was voluntary because the finding was supported by substantial evidence in the form of the testimony of the police officers involved in his arrest and interrogation. *Id.* at *5.

For the first time, Browning raised the additional argument in his direct appeal that the statement should have been suppressed because he had invoked his right to counsel immediately prior to making the statement. In its opinion, the Supreme Court set forth these underlying facts: "At the beginning of the recorded statement, and after he had already signed a waiver of his right to counsel, Browning said, 'I'd rather do this with an attorney present.' In response, Detective Cook said, 'We're just going to go over the statement you give [sic] us

earlier, okay? That's what I told you, right?' Browning said, 'Yeah,' and Detective Cook proceeded to take Browning's statement." *Id*. at *5.

The Supreme Court reviewed this unpreserved claim under the palpable error standard, stating: "Prior to the videotaped statement, Browning had signed a waiver of his rights, spoken with police officers at length, and confessed. Browning has not shown how, in light of the preceding facts, the exclusion of his videotaped statement would have altered the result. Thus, there was no palpable error in the admission of Browning's videotaped statement." *Id*. at *6.

Browning contends that if his attorney's suppression motion had raised the argument regarding his invocation of the right to counsel, the recorded statement would either have been excluded by the trial court or, alternatively, his conviction would have been reversed on appeal because the claim would have been reviewed under the clearly erroneous standard, rather than the more stringent palpable error standard.

We are fully cognizant that under *Martin v. Commonwealth*, an unpreserved error which does not warrant reversal on direct appeal under the palpable error standard of review may nonetheless form the basis for a claim of ineffective assistance of counsel in post-conviction proceedings. 207 S.W.3d 1, 4-5 (Ky. 2006). The *Martin* Court distinguished the two standards thusly: "When an appellate court engages in a palpable error review, its focus is on what happened

and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Id*. By contrast, the ineffective assistance of counsel inquiry is broader and requires consideration of whether the error "was a result of trial strategy, the negligence or indifference of counsel, or any other factor that would shed light upon the severity of the defect and why there was no objection at trial." *Id*. In accordance with *Strickland*, a claimant making an ineffective assistance of counsel claim need not show that counsel's alleged error actually determined the outcome of the trial, but only that it rendered the result of the proceeding unreliable. "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Martin*, 270 S.W.3d at 4.

At the time he made the statement to Detective Cook that he would "rather do this with an attorney present," Browning had already signed a *Miranda* waiver and confessed to the police. The Commonwealth argues that Browning's invocation of counsel was equivocal and that seeking to suppress his statement on this basis would have been futile. In light of these circumstances, the fact that Browning's attorney did not raise the right to counsel issue in the suppression motion did not render her performance professionally deficient. Browning's attorney filed a competent suppression motion based on what she reasonably

-10-

viewed as the more powerful argument, that his confession was coerced by the police.

Furthermore, counsel's decision not to raise this claim does not meet the second component of *Strickland*, which, as reiterated by *Martin*, requires a showing that the omission rendered the proceeding unreliable and hence unfair. The evidence against Browning was, as his trial attorney testified at the RCr 11.42 hearing, overwhelming. The jury heard the audio recording secretly made by Browning's wife, and also heard G.B.'s testimony that the sounds on that recording were of her father abusing her. This constituted powerful evidence to support the jury's verdict. Browning has not shown that his attorney's decision not to raise the invocation of the right to counsel argument in the suppression motion rendered his trial unfair or its outcome unreliable.

Next, Browning argues that his trial counsel was ineffective for failing to preserve by avowal his wife's testimony about her pending indictment for manufacturing methamphetamine. Its opinion sets forth the following account of what occurred at trial:

> At the time of the second trial, Browning's wife, Nicole, had charges pending in Bullitt County. During cross-examination, Browning's counsel asked Nicole about those pending charges and the Commonwealth objected. At the bench conference, Browning's counsel argued that the fact Nicole had charges pending went to her credibility. The court asked if counsel had any evidence that Nicole had been offered any consideration

-11-

by the Commonwealth with regard to those charges in exchange for her testimony against Browning. Counsel said that she did not have any evidence of any offer by the Commonwealth to Nicole. The court then granted the Commonwealth's objection and admonished the jury to disregard the question. . . . Browning did not seek to ask any further questions by avowal.

*Browning*, 2013 WL 4580486, at *8.

On direct appeal, Browning argued that the trial court's ruling hampered his ability to effectively cross-examine Nicole and that her indictment was evidence of her bias against him. *Id*. In reviewing this argument under the palpable error standard, the Supreme Court stated:

Browning argues that his inability to impeach Nicole's credibility "had a material effect on [his] defense in this case," which was that he did not abuse G.B. In support of his argument, Browning cites to the overall weakness of the Commonwealth's case and to G.B.'s inconsistent statements. He does not set forth what portion of Nicole's testimony was false or even questionable. And he does not set forth how attacking her credibility would have done anything to further his claim that he did not abuse G.B. As the Commonwealth notes, Nicole primarily testified about placing and retrieving the audio recorder and taking the recorder and G.B. to the sheriff's office. Those facts were not in dispute and impeaching Nicole's credibility would not have changed them. Therefore, we cannot say that the trial court's exclusion of questions regarding Nicole's pending criminal charges was palpable error.

*Id.* at *8.

In its order denying the RCr 11.42 motion, the trial court stated that Browning had shown no prejudice stemming from the exclusion of Nicole's testimony regarding her indictment nor had he shown how her cross-examination on this matter would have benefitted his case. We agree. Speculative allegations regarding Nicole's alleged bias do not rise to the level of specificity required by RCr 11.42(2). *Roach v. Commonwealth*, 384 S.W.3d 131, 140 (Ky. 2012). Even if we accept for the sake of argument that Nicole had agreed to cooperate with the police to convict Browning in exchange for leniency in her own case, impeaching her on these grounds would not have undermined her primary testimony about how she placed and retrieved the audio recorder and then took it and G.B. to the sheriff's office. The fact that Browning did not preserve Nicole's testimony regarding her indictment by avowal did not affect the reliability of his trial nor did it create a reasonable likelihood that the outcome of the trial would have been different.

For the foregoing reasons, the order of the Bullitt Circuit Court denying Browning's RCr 11.42 motion is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Maureen Sullivan
Louisville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky