RENDERED: AUGUST 25, 2016
TO BE PUBLISHED

# Supreme Court of Kentucky

2014-SC-000266-DG

FINAL
DATE 9/15/16 Kim Redmon DC

COMMONWEALTH OF KENTUCKY

APPELLANT

ON REVIEW FROM COURT OF APPEALS
CASE NO. 2012-CA-001037-MR
KENTON CIRCUIT COURT NO. 10-CR-00186

V.

DOUGLAS RANK

APPELLEE

## OPINION OF THE COURT BY JUSTICE VENTERS

## AFFIRMING

The Commonwealth appeals from an opinion of the Court of Appeals which remanded this case to the Kenton Circuit Court for an evidentiary hearing on Appellee Douglas Rank's RCr 11.42 motion. Based upon a guilty plea, Rank was convicted of first degree assault for which he was serving a fifteen-year prison sentence when he moved pursuant to RCr 11.42 to vacate his conviction. Rank's motion included a request for an evidentiary hearing to establish that his guilty plea was not made knowingly, intelligently and voluntary and was, instead, the result of ineffective assistance of his trial counsel, Robert P. Gettys, and to lesser degree, attorney Pat Hickey.

The circuit court denied Rank's motion without an evidentiary hearing. Rank appealed, and the Court of Appeals concluded that he had raised issues of fact that required an evidentiary hearing and remanded the case for an

evidentiary hearing. We granted the Commonwealth's motion for discretionary review. For reasons stated below, we affirm the Court of Appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Rank advances several theories to support the claim that he was denied the effective assistance of trial counsel in connection with this guilty plea. His primary claim is that Gettys failed to advise him about the possibility of a defense based upon the legal theory of "extreme emotional disturbance" (EED), which if successfully asserted could have resulted in a lesser offense, and correspondingly, a lesser sentence. Rank complains that Gettys never explored the viability of an EED defense. Rank also asserts that Gettys was ineffective as a result of several ethical violations, including an attorney's fee and lien agreement that created a personal conflict of interest affecting his representation of Rank. For a proper perspective of Rank's claims, we first review the circumstances of his conviction.

Rank was a practicing psychiatrist who developed a romantic relationship with a former patient named Misty Luke, who would become the victim of his assault. The couple lived together at Rank's residence located in the same building as his professional office. After a heated argument with Rank, and apparently believing that he had left the building, Luke texted a message to Rank telling him that she was ending their relationship and leaving. Rank, still on the premises, reacted immediately by returning with a

2

sword and attacking Luke.[1] He stabbed her four times. Other residents in the building heard the commotion and intervened. They overpowered Rank, took the sword, and removed Luke from the scene.

Rank was arrested; his bail was set at $50,000.00 cash. Through the advice of an attorney-friend, Patrick Hickey, Rank hired Gettys for his criminal defense. Rank claims that Gettys and Hickey advised him not to post bond. Gettys obtained Rank's power-of-attorney so that he would have control over Rank's assets, ostensibly to protect them from a possible civil suit by Luke.

A few weeks later, Rank was indicted and charged with attempted murder, a Class B felony carrying a possible sentence of ten to twenty years' imprisonment. Gettys moved for a psychiatric evaluation to determine if Rank was competent to stand trial. The trial court ordered the Kentucky Correctional Psychiatric Center (KCPC) to examine Rank and report upon his competence. After an evidentiary hearing on the issue, the trial court concluded that Rank was competent.

In the meantime, Gettys had secured the services of Dr. Bobby Miller, a board-certified forensic neuro-psychiatrist, to interview Rank and advise Gettys with respect to Rank's mental condition. Eventually, Dr. Miller would testify at the sentencing hearing that he determined that, although Rank was not insane, he suffered from schizotypal personality disorder. Gettys served notice pursuant to RCr 7.24(3)(B)(i) that Rank would present expert testimony at trial

---

[1] The sword was apparently a Civil War relic that was part of a collection belonging to another resident of the building.

to show that Rank suffered from a mental disease or defect, or other mental condition relevant to the issue of guilt or punishment.[2] Gettys also moved the court for permission to obtain a pretrial deposition of Luke on the grounds that to properly evaluate Rank and formulate an opinion for use at trial, Dr. Miller needed information from Luke.

At that point in the pretrial process, the Commonwealth extended a written plea offer, agreeing to recommend a sentence of 15 years' imprisonment if Rank would plead guilty to an amended charge of first degree assault.[3] On Gettys' advice, Rank accepted the offer. His plea was entered in open court following the typical *Boykin*[4] colloquy during which he acknowledged that he

---

[2] In 2010, RCr 7.24(3)(B)(i) provided in part: "If a defendant intends to introduce expert testimony relating to a mental disease or defect or any other mental condition of the defendant *bearing upon the issue of his or her guilt or punishment*, the defendant shall, at least 20 days prior to trial, or at such other time as the court may direct upon reasonable notice to the parties, notify the attorney for the Commonwealth in writing of such intention and file a copy of such notice with the clerk." As filed, the notice does not indicate specifically whether expert testimony is intended to be introduced for guilt or punishment. Today, however, a notice to introduce expert testimony on mental issues must contain the purpose of the testimony. Effective January 1, 2013, RCr 8.07(2)(A) provides in part: "A defendant who intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on (i) the issue of guilt; (ii) the issue of punishment; or (iii) the issue of guilt and the issue of punishment; shall, not less than ninety (90) days before the date set for commencement of trial of the alleged offense, file a notice in writing of this intention with the clerk and serve a copy of the notice upon the attorney for the Commonwealth and all other parties. *The notice shall specify whether the defendant intends to introduce expert evidence bearing on the issue of guilt, the issue of punishment or both such issues.*" (Emphasis added.)

[3] First degree assault, like attempted murder, is a Class B felony, so the plea offer involved a different charge than the original indictment, but not a reduced charge.

[4] *Boykin v. Alabama*, 395 U.S. 238 (1969).

4

had no complaints regarding the services of his counsel and that he was pleading guilty freely, knowingly, intelligently and voluntarily.

Although the plea agreement stated that Rank could argue for "a lesser or probated sentence," Rank understood that because of the nature of his crime, probation was statutorily prohibited and he would not be eligible for parole until he had served 85% of the sentence.[5] The trial court accepted the guilty plea and ordered a presentence investigation.

At the sentencing hearing and pursuant to its agreement, the Commonwealth recommended a fifteen-year sentence. The prosecutor asserted that Rank's attack on Luke was motivated by rage and jealously that she was leaving him. In mitigation of punishment, Gettys presented testimony of three witnesses: a rabbi who had known Rank for several years, a former professional associate of Rank, and Dr. Miller.

Dr. Miller testified that Rank was competent and sane, but suffered from schizotypal personality disorder that caused problems in interpersonal relationships and made him susceptible to "fixed responses" in stressful situations. Dr. Miller explained at the sentencing hearing that the intensity of Rank's attack on Luke was caused by the sense of betrayal he felt when Luke said she was leaving him. Gettys informed the trial court that he had initially considered an insanity defense, but Dr. Miller's opinion ruled it out. Gettys urged the trial to consider Rank's personality disorder, with its associated

---

[5] See KRS 439.3401.

5

obsessive behavior and poor interpersonal relations, along with his alcohol use on the night of the assault, as factors in mitigation of punishment. Rank offered no explanation for his conduct and claimed that he had no recollection of the incident. The trial court declined Rank's plea for mitigation and imposed the fifteen-year sentence recommended by the Commonwealth.

## II. RCr 11.42 AND THE *STRICKLAND* TEST FOR INEFFECTIVE ASSISTANCE OF COUNSEL

RCr 11.42 provides a process by which a convicted prisoner may collaterally attack the validity of his sentence. When a motion for relief under RCr 11.42, or the response to such a motion, raises a material issue of fact that cannot be resolved on the face of the record, the trial court must grant a prompt hearing. RCr 11.42(5). To successfully establish the invalidity of a guilty plea based upon the allegedly deficient performance of defense counsel, the movant must satisfy both prongs of the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) and restated by this Court in *Bronk v. Commonwealth*, 58 S.W.3d 482, 486-487 (Ky. 2001). The movant must demonstrate that: (1) defense counsel's performance fell outside the wide range of professionally competent assistance; and that (2) a reasonable probability exists that, but for the deficient performance of counsel, the movant would not have pled guilty, but would have insisted on going to trial. In making that determination, the trial court must indulge the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. The trial court must "consider the

totality of the circumstances surrounding the guilty plea and juxtapose the presumption of voluntariness inherent in a proper plea colloquy with a *Strickland v. Washington* inquiry into the performance of counsel[.]" *Bronk*, 58 S.W.3d at 486 (citations omitted). "[T]he trial court must evaluate whether errors by trial counsel significantly influenced the defendant's decision to plead guilty in a manner which gives the trial court reason to doubt the voluntariness and validity of the plea." *Id.* at 487.

Rank's RCr 11.42 motion alleged several specific deficiencies in Gettys' representation. Rank claims that Gettys failed to explore the possibility of an EED defense and that he failed to explain to him the legal concept of EED. He also claims that the effectiveness of Gettys' representation was compromised by the conflicts of interest inherent in Gettys' fee arrangement. Rank also claimed that Gettys failed to file a formal discovery motion, failed to follow criminal practice and procedure, failed to assist him in posting bond, and failed to adequately counsel him in making a knowing and intelligent decision to plead guilty. He also claimed that Gettys failed to present effective mitigating evidence at the sentencing hearing.

The trial court regarded Gettys' apparent conflict of interest as troubling, but otherwise concluded under *Strickland* inquiry that it had no effect on the issue of whether Rank had intelligently and voluntarily pled guilty. The trial court rejected Rank's claim that Gettys failed to investigate the EED defense, pointing out that Gettys fulfilled his obligation of competent representation by retaining Dr. Miller to evaluate Rank for mental conditions that might provide

7

the basis for a defense. The trial court also concluded that an EED defense could not have succeeded because Rank, who claimed to have no recollection of the event, would not have been able to explain at trial what provoked him to assault Luke.

Based upon the totality of the circumstances apparent from the face of the record, the trial court concluded that Rank could not satisfy *Strickland*'s second prong by demonstrating a reasonable probability that, but for counsel's deficient performance, Rank would have insisted on going to trial rather than plead guilty. The trial court found, that "[w]hile his counsel's performance may well have fallen outside the range of professionally competent and ethical assistance, [Rank] has failed to establish that he would have proceeded to trial in this case [but for counsel's deficient performance.]"

The Court of Appeals disagreed, holding that whether Rank, if properly advised and represented, would have rejected the plea offer and proceeded to trial hinged upon issues of fact that could not be determined from the record alone. Specifically, the Court of Appeals found that the record was insufficient to dispel Rank's claim that Gettys did not investigate the EED defense, and that Dr. Miller's testimony at the sentencing hearing did not foreclose that factual issue. The Court of Appeals found that Rank's other claims of deficient representation, including Gettys' advice not to post bail, his failure to obtain formal discovery, and his control of Rank's assets all raised factual issues that may have influenced Rank's decision to plead guilty. We granted discretionary review of that decision and now affirm the Court of Appeals.

8

## III. ANALYSIS

### A. An evidentiary hearing is warranted on Rank's claim that counsel failed to investigate and advise him of an EED defense.

The Commonwealth contends that the Court of Appeals erred because the record clearly demonstrates the invalidity of Rank's claim that Gettys failed to properly investigate the viability of an EED defense. The Commonwealth reiterates the trial court's conclusion that Gettys' effectiveness with respect to an EED defense was established by the fact that he employed Dr. Miller as a mental health consultant and expert witness to evaluate Rank and to consult with counsel. The Commonwealth also argues that under the facts apparent from the record and as established at the sentencing hearing, an EED jury instruction and the possibility of a lesser offense that comes with it, would not have been available to Rank. We do not agree.

In his RCr 11.42 motion, Rank identified two deficiencies in Gettys' performance relating to EED. Rank alleged that the concept of EED as a defense against attempted murder was never discussed with him by Gettys, by Hickey, or by Dr. Miller, and that he was not otherwise aware of the potential EED defense until he was sentenced. Rank also alleged that his attorney did not investigate the circumstances of the crime to determine if an EED defense was feasible. Consequently, Rank claimed, he was not able to make an intelligent, informed decision.

KRS 507.020 provides for the reduction of a murder charge to first-degree manslaughter when the accused intended to kill the victim but "acted

9

under the influence of an [EED] for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." KRS 508.040(1) extends the same mitigating effect of EED to assault charges.

In *McClellan v. Commonwealth*, we defined "extreme emotional disturbance" as follows:

> Extreme emotional disturbance is a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes. It is not a mental disease in itself, and an enraged, inflamed, or disturbed emotional state does not constitute an extreme emotional disturbance unless there is a reasonable explanation or excuse therefor, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under circumstances as defendant believed them to be.

715 S.W.2d 464, 468-469 (Ky. 1986).

The possibility that EED played a role in Rank's crime would have been readily apparent to any lawyer versed in criminal law and aware of the basic facts of the crime. Consistent with the Commonwealth's version of events, Rank became enraged upon learning that his cohabitant girlfriend was breaking up their relationship and he immediately attacked her violently and intensely with a sword, stabbing her four times.

The significance of the EED defense is apparent in Rank's case. Before agreeing to plead guilty to first degree assault, Rank was charged with attempted murder and, had he opted to go to trial, he would have been tried on

10

that charge. Attempted murder is a Class B felony[6] with a sentencing range of not less than ten nor more than twenty years' imprisonment.[7] However, when committed by one acting under the influence of extreme emotional disturbance, attempted murder would be reclassified as attempted first degree manslaughter, which is a Class C felony,[8] with a sentencing range of not less than five nor more than ten years' imprisonment.[9] It is worth noting that the amendment of the charge to first degree assault did not afford Rank any sentencing advantage at all. First degree assault, like attempted murder, is a Class C felony[10] with the same ten-to-twenty year sentencing range. However, first degree assault, when committed by one acting under the influence of an extreme emotional disturbance, drops down to a Class D felony.[11] A Class D felony carries a sentencing range of imprisonment for *not less than one nor more than five years.*[12]

Because we cannot know with certainty how the evidence would have unfolded at trial, we cannot predict how the jury would have been instructed.

---

[6] Murder is a capital offense, KRS 507.020, and therefore attempted murder is a Class B felony. KRS 506.010(4)(b) ("A criminal attempt is a: . . . (b) Class B felony when the crime attempted is a Class A felony or capital offense[.]").

[7] KRS 532.060(2)(b).

[8] First degree manslaughter is a Class B felony under KRS 507.030(2), and therefore attempted first degree manslaughter is a Class C felony. KRS 506.010(4)(c) ("A criminal attempt is a: . . . (c) Class C felony when the crime attempted is a Class B felony[.]").

[9] KRS 532.060(2)(c)

[10] KRS 508.010(2).

[11] KRS 508.040(2)(a).

[12] KRS 532.060(2)(d).

Nevertheless, we can say that it is entirely plausible from the circumstances of the crime that the jury would have been instructed on alternative theories of guilt allowing for a conviction for attempted murder or first degree assault, pursuant to *Hall v. Commonwealth*, 337 S.W.3d 595, 608 (Ky. 2011) ("[W]here the victim's suffering a serious physical injury is not really at issue, a first degree assault instruction can be given as a lesser-included offense when the defendant's intent (to kill or to injure) determines whether he or she is guilty of first degree assault or attempted murder."). Thus, the presentation of an EED defense could have resulted in a conviction for the Class D felony of first degree assault under extreme emotional disturbance.

Rank alleges that he was never advised by counsel about EED and the effect it could have on his sentence and, therefore, he never had the option of making an informed decision. It is entirely possible, and it is not unreasonable to believe, that if Rank had been properly advised with respect to EED and the possibility of a sentence of less than five years, he would have opted for a trial. Instead, he pled guilty to an amended charge that carried exactly the same penalty range, ten to twenty years, as the initial charge.

The trial court denied Rank's RCr 11.42 motion based on the second prong of *Strickland*, finding no reasonable probability that, but for the deficient performance of counsel, Rank would have insisted on going to trial. If Rank's claim that, before pleading guilty, he was not fully and fairly apprised with respect to EED is true, there is a reasonable possibility that he may have rejected the plea offer and opted for trial. The record does not on its face

resolve that factual issue. The Court of Appeals correctly concluded that an evidentiary hearing should have been granted.

Rank also contends that Gettys not only failed to advise him with respect to EED, but that he failed even to investigate or explore the possibility of raising EED in defense to the attempted murder charge. The Commonwealth argues that that aspect of Rank's claim is refuted by Gettys' retention of a mental health expert. Gettys' retention of Dr. Miller does not conclusively demonstrate that he was attuned to the obvious possibility that EED might apply to reduce the severity of the principal charge, and hence, the applicable range of punishment.

The record clearly establishes that Gettys was concerned about Rank's competence to stand trial and about the plausibility of an insanity defense. He expressly hired Dr. Miller to explore those possibilities. Competence and insanity are ordinarily the manifestation of a mental disease or defect. Extreme emotional disturbance is neither. Except in rare cases where the diagnosis is self-evident, competence to stand trial and insanity typically depend upon the informed opinion of a medical, psychiatric, or psychological expert. Unlike competence and insanity, extreme emotional disturbance by definition does not arise from a mental disease or defect. See *McClellan, supra.* It is a factual determination reasonably within the ordinary comprehension of lay jurors. Expert psychiatric or psychological testimony may assist in understanding an emotional reaction like EED, but expert opinion testimony is not required to sustain a finding of EED.

13

The record does not conclusively establish that Dr. Miller examined Rank for the purpose of testifying about EED. The record is silent with respect to Dr. Miller's role beyond determining Rank's sanity and competence. Dr. Miller met with Rank one time for 3 ½ hours to conduct his basic evaluation of Rank's current mental status. He told Gettys it was unlikely he could assist in Rank's mental health defense during the guilt/innocence trial phase. His role was to provide mitigating testimony at sentencing by explaining Rank's diagnosed schizotypal personality disorder. Dr. Miller never mentioned EED, and whether he considered it and discussed it with Gettys or Rank is not apparent from the record.

In support of his contention that Dr. Miller was not hired to explore the viability of an EED defense, Rank asserts that during Dr. Miller's evaluation of him, Dr. Miller asked no questions bearing on the possibility that the attack may have resulted from an EED, and that Dr. Miller never mentioned EED. Dr. Miller testified at the sentencing hearing that he was hired to help Gettys understand Rank and to help explain Rank's disorder and behavior in the context of the crime as part of mitigation.

We accept the Commonwealth's response that defense counsel cannot be held responsible for the quality of an expert's evaluation, but that misses the point. If Dr. Miller was not expressly instructed to evaluate Rank and the circumstances of his crime in light of the definition of EED, the error is Gettys', not Miller's. The record does not resolve the question. Defense counsel's obligation to conduct reasonable investigations, *Haight v. Commonwealth,* 41

14

S.W.3d 436, 446 (Ky. 2001), is not altered when a mental health expert is employed to conduct an EED evaluation.

EED is a statutorily defined defense bearing upon the issue of guilt; more specifically, it can determine which crime the defendant committed. *Coffey v. Messer*, 945 S.W.2d 944, 946 (Ky. 1997). Defense counsel has a duty to conduct a reasonable investigation of law and facts relevant to potential defenses. In assessing the reasonableness of counsel's investigation, *Strickland* explains:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

466 U.S. at 691 (citation omitted). Thus, defense counsel is obligated "to make reasonable investigations [of potentially applicable legal and factual issues] or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.

15

Rank's motion raised a material question as to the reasonableness of Gettys' investigation of the potential for an EED defense or, framed differently, whether it was reasonable for Gettys not to pursue an EED defense. *See Hodge v. Commonwealth*, 68 S.W.3d 338 (Ky. 2001) (an evidentiary hearing is required to determine whether counsel's decision was "trial strategy or an abdication of advocacy"). Gettys' knowledge and understanding of the relevant facts relating to a potential EED defense are not evident on the face of the record. An evidentiary hearing on Rank's RCr 11.42 motion was required to ascertain those facts.

**B. An evidentiary hearing is not warranted on Rank's other claims.**

Rank also alleges that factors, other than the EED issue, also rendered defense counsel's performance constitutionally ineffective. He argues that an evidentiary hearing should have been granted to determine if counsel's effectiveness was impaired due to his conflicts of interest; his failure to file a formal written motion for discovery; his failure follow criminal practice and procedure; his failure to assist Rank in getting released on bond to aid in his defense; a breach of counsel's fiduciary duty; counsel's failure to adequately assist him in making a knowing, intelligent, and voluntary decision about whether or not to plead guilty; and counsel's failure to present effective mitigating evidence at the sentencing hearing. As explained below, we are satisfied that these claims did not require an evidentiary hearing.

## 1. *Conflict of interest*

Rank alleges that his acquaintance and personal attorney, Patrick Hickey, not only recommended that he hire Gettys, but also acted as Gettys' co-counsel. As described by Rank, Hickey's role as co-counsel is demonstrated by Hickey visiting him in jail, advising him (in conjunction with Gettys) not to post bond and to liquidate his assets, counseling him about whether or not to plead guilty, providing materials to the expert witness, and sitting at counsel table during sentencing. Hickey had previously represented Luke in an eviction case and Rank contends that that representation created a conflict of interest for Hickey.

*Mitchell v. Commonwealth*, 323 S.W.3d 755, 760 (Ky. App. 2010), provides the standard of review particular to an ineffective assistance of counsel claim premised on a conflict of interest. "[I]n order to successfully assert a claim of ineffective counsel based on a conflict of interest, a defendant who entered a guilty plea must establish: (1) that there was an actual conflict of interest; and (2) that the conflict adversely affected the voluntary nature of the guilty plea entered by the defendant." *Id.* at 760 (citing *Thomas v. Foltz*, 818 F.2d 476, 480 (6th Cir. 1987)). "A conflict arises from competing duties or interests that create the *potential* for prejudice." *Beard v. Commonwealth*, 302 S.W.3d 643, 647 (Ky. 2010).

Applying this standard to Rank's allegations, we conclude that an evidentiary hearing on the issue was not required. Hickey's prior

17

representation of Luke in an unrelated civil action could not have affected Rank's defense in the criminal case.

## 2. *Failure to file a formal discovery motion*

Rank alleges that Gettys failed to file a routine motion for discovery, and that he further failed to provide Rank with the discovery materials voluntarily disclosed by the Commonwealth. Our review of the record persuades us that Rank cannot establish that Gettys' performance with respect to pretrial discovery was substandard or that it had any prejudicial effect on the defense. The record indicates, and Rank acknowledges, that all discoverable material was obtained. Gettys' failure to make an unnecessary motion was not unreasonable. Rank cannot demonstrate how he was prejudiced by not seeing all of the discovery material Gettys obtained. An evidentiary hearing is not required on this issue.

## 3. *Failure to follow proper procedure in motion to depose the victim*

Rank alleges that Gettys' motion to depose Luke did not comply with proper criminal practice and procedure. He asserts that the motion provided no supporting legal authority and was filed without proper notice to the Commonwealth. Although the trial court allowed Gettys time to submit supporting authority for the request to depose Luke, Rank asserts that Gettys never did so.

Rank complains that Gettys' omission displays his lack of understanding of criminal law practice and procedure. He does not, however, indicate how he was prejudiced, and we fail to see any prejudice. The record reflects that

18

Luke's deposition was taken and was available to Dr. Miller. An evidentiary hearing is not required on this issue.

### 4. *Failure to assist in posting bond; and breach of fiduciary duty*

Rank alleges that both Gettys and Hickey advised him that posting bond would be adverse to his interest because it would create the appearance that he was wealthy; it may encourage Luke to file a civil suit against him; and it may lead to getting his bond increased. Gettys advised Rank to grant Gettys his power of attorney so that Gettys could shield Rank's assets from the potential civil claim. Rank points out if he had posted bond, he would not have needed Gettys to have his power of attorney, nor would he have had to pay Gettys for managing his personal business affairs. Rank claims that Gettys sold many of Rank's possessions for less than fair market value. As noted by the trial court, these allegations raise troubling ethical concerns but Rank does not explain how these actions would have impacted his decision to plead guilty. An evidentiary hearing is not required for these issues.

### 5. *Misadvice on guilty plea*

Rank contends that he was induced to plead guilty as a result of inaccurate advice provided by trial counsel about his eligibility for probation and parole. Even if this allegation is true, which is a factual issue we do not decide, the record discloses that the trial court clearly and correctly informed Rank that he was pleading guilty to a violent crime and would have to serve 85% of the sentence before becoming eligible for parole. Although at one point in the plea hearing Rank hesitated and asked for a continuance to more fully

19

consider his options, he ultimately relented and acknowledged that his guilty plea was knowing, intelligent, and voluntary. We held in *Edmonds v. Commonwealth*:

> If the information given by the court at the plea hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant.

189 S.W.3d 558, 568 (Ky. 2006) (quotation and citations omitted).

The record reveals that any erroneous information given to Rank by counsel about probation and parole eligibility was corrected by the trial court. The trial court explained the terms of the plea and Rank expressed his understanding of them. An evidentiary hearing is not required on this issue.

### 6. *Mitigation evidence at sentencing hearing*

Rank alleges that defense counsel failed to present effective mitigating evidence at his sentencing hearing. He complains that Gettys presented the testimony of Dr. Miller that he had schizotypal personality disorder, that he did not think his actions were wrong, and that he chose the sword as his weapon because of its meaning to him. Rank complains that Dr. Miller's testimony portrayed him as unremorseful and dangerous. He blames Gettys for not anticipating the negative impact of Dr. Miller's testimony. Rank also complains that Gettys' examination of other witnesses at the sentencing hearing failed to focus on his better qualities, his lack of a criminal record, and his remorse, but instead emphasized Rank's obsessive/compulsive nature. Rank's complaints are, in this regard, refuted by the record. Rank seemingly discounts the

20

positive references to his intelligence and productivity as a member of society. Dr. Miller described the schizotypal personality disorder as treatable with medication and psychotherapy, and that with treatment, Rank posed no danger to society. A significant amount of sentencing hearing testimony reinforced Gettys' plea for mitigation.

Although Rank complains about his counsel's witness selection, "[d]ecisions relating to witness selection are normally left to counsel's judgment and this decision will not be second-guessed by hindsight." *Foley v. Commonwealth*, 17 S.W.3d 878, 885 (Ky. 2000) (citation omitted), overruled on other grounds by *Stopher v. Conliffe*, 170 S.W.3d 307 (Ky. 2005). Furthermore, a defendant "is not guaranteed errorless counsel, or counsel judged ineffective by hindsight, but counsel likely to render and rendering reasonably effective assistance." *Haight*, 41 S.W.3d at 442.

As is not uncommon, after hearing the mitigation testimony, the trial court imposed the sentence recommended by the Commonwealth rather than the sentence hoped for by the defendant. The record refutes Rank's claim that Gettys' performance with respect to mitigation witnesses was prejudicial to his case. An evidentiary hearing is not required on this issue.

## IV. CONCLUSION

For the foregoing reasons, the Court of Appeals is affirmed. This case is remanded to the Kenton Circuit Court for an evidentiary hearing on Rank's RCr 11.42 motion, limited to the issue involving counsel's alleged ineffectiveness in

21

investigating the potential for an EED defense and in advising Rank with respect to the possible ramifications of an EED defense.

All sitting. Minton C.J.; Cunningham, Hughes, and Noble, JJ., concur. Keller, and Wright, JJ., concur in result only.

COUNSEL FOR APPELLANT:

Andy Beshear
Attorney General of Kentucky

Taylor Allen Payne
Assistant Attorney General

COUNSEL FOR APPELLEE:

Douglas Rank
Eastern Kentucky Correctional Complex
200 Road to Justice
West Liberty KY 41472