CORRECTED: FEBRUARY 20, 2020
RENDERED: AUGUST 29, 2019
NOT TO BE PUBLISHED

Supreme Court of Kentucky



2018-SC-000281-DG DATE *MKaten* 2-20-20

DAVID MURPHY                                                          APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                           CASE NO. 2017-CA-000179-MR
PULASKI CIRCUIT COURT NO. 14-CR-00405

COMMONWEALTH OF KENTUCKY                                              APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

On June 18, 2015, David Murphy pled guilty to the charge of Sodomy

First Degree, Victim Under 12. On August 18, 2015, he was sentenced to

twenty years' imprisonment, the statutory minimum. At the sentencing

hearing, the trial court denied Murphy's motion to withdraw his plea. Murphy

never challenged his guilty plea on direct appeal. Instead, on August 15, 2016,

Murphy filed an RCr[1] 11.42 Motion to Vacate, Set Aside or Correct Sentence.

The trial court denied Murphy's motion and the Court of Appeals affirmed.

Thereafter, we granted Murphy's petition for discretionary review.

---

[1] Kentucky Rules of Criminal Procedure.

## I. Factual and Procedural Background.

At Murphy's guilty plea hearing, the trial court conducted the following *Boykin*[2] plea colloquy:

Judge: Are you under the influence of any drugs or alcohol today?

Murphy: No.

Judge: Are you thinking clearly?

Murphy: Yup.

Judge: Anybody threaten you or do anything against your will?

Murphy: No.

Judge: Do you have any mental illness that will keep you from understanding what is being said here today?

Murphy: I'm slow.

Judge: But can you understand what I am saying?

Murphy: Yeah.

Judge: If I move too fast, you stop me and ask me a question or talk to your lawyer. Are you satisfied with your lawyer?

Murphy: She has done what she had to do, what I wanted her to do.

Judge: Do you know that by pleading guilty, you're giving up your right to a trial and to appeal?

Murphy: Yes, sir, I do.

Judge: Those are constitutional rights and you're waiving them. Do you understand?

---

[2] *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

Murphy:     Yes.

Judge:      Well, as I understand it, you've worked out a deal here on one count. Let me ask you, do you plead guilty or not guilty on the sodomy first-degree, victim under age 12?

Murphy:     I plead guilty.

Judge:      Are you pleading guilty because you are guilty and for no other reason? Look at me.

Murphy:     I'm guilty.

Judge:      Let the record reflect that upon examination of this Defendant, the Court finds and concludes that this plea of guilty is made knowingly, voluntarily, and intelligently. Further find that he's represented by competent counsel known by this court, with whom this Defendant has expressed his satisfaction. The Court does hold, order, and adjudge David Brandon Murphy guilty of this Class A felony.

Murphy argued in his RCr 11.42 motion that this plea colloquy was insufficient and prejudicial, that the trial court could not have determined from the above colloquy and signed plea agreement that his guilty plea was "voluntary and intelligent," and that his trial counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), for failing to ask the court to conduct a more thorough colloquy. *See Edmonds v. Commonwealth*, 189 S.W.3d 558, 565 (Ky. 2006) (discussing *Boykin* colloquy requirements). After reviewing the record, we affirm the Court of Appeals' decision upholding the denial of Murphy's RCr 11.42 motion but on different grounds.

## II. Standard of Review.

"The structure provided in Kentucky for attacking the final judgment of a trial court in a criminal case is not haphazard and overlapping, but is organized and complete." *Gross v. Commonwealth*, 648 S.W.2d 853, 856 (Ky. 1983). The underlying issue here is whether the trial court conducted a proper *Boykin* colloquy, and thus, whether Murphy entered a knowing and voluntary guilty plea. However, Murphy failed to raise this issue on direct appeal.

An RCr 11.42 motion may only collaterally attack one's sentence and is "limited to issues that were not and could not be raised on direct appeal." *Mills v. Commonwealth*, 170 S.W.3d 310, 326 (Ky. 2005), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151, 158–59 (Ky. 2009); *see also Kiper v. Commonwealth*, 415 S.W.2d 92, 95 (Ky. 1967) ("the motion under RCr 11.42 is not a substitute for appeal, and [] it does not permit a review of all the alleged errors surrounding the trial[]" (quotation omitted)). Therefore, because Murphy could have, but did not, directly appeal this issue, this Court cannot review whether the trial court committed reversible error in conducting an inadequate plea colloquy. Rather, we are constrained to analyzing Murphy's claim under the *Strickland* ineffective assistance of counsel standard.[3]

---

[3] We point out that this case may have had a different outcome, and certainly a different standard of review, had the issue been raised on direct appeal. Indeed, *Boykin* issues are not waived when a defendant signs a plea agreement waiving his right to appeal. *See Grigsby v. Commonwealth*, 302 S.W.3d 52, 55 (Ky. 2010) ("*Boykin* challenges survive a waiver of the right to appeal").

4

the performance of counsel[.]'" *Commonwealth v. Rank*, 494 S.W.3d 476, 481 (Ky. 2016) (quoting *Bronk v. Commonwealth*, 58 S.W.3d 482, 486 (Ky. 2001)). Further, "[t]o successfully establish the invalidity of a guilty plea based upon the allegedly deficient performance of defense counsel, the movant must satisfy both prongs of the two-part test set forth in *Strickland v. Washington* . . . and restated by this Court in *Bronk v. Commonwealth*." *Id.* Lastly, "the trial court must evaluate whether errors by trial counsel significantly influenced the defendant's decision to plead guilty in a manner which gives the trial court reason to doubt the voluntariness and validity of the plea." *Bronk*, 58 S.W.3d at 487.

The first prong of a *Strickland* claim is whether trial counsel's conduct was deficient. Murphy's *pro se* RCr 11.42 motion before the trial court set forth three reasons why his trial counsel's conduct was deficient: (1) trial counsel failed to challenge the confession Murphy gave to police; (2) trial counsel failed to file a motion asking for an expert witness to refute Kentucky Correctional Psychiatric Center's (KCPC) mental health report; and (3) trial counsel should have asked the court to hold itself to the full standards of the colloquy phase at Murphy's guilty plea hearing. On appeal, however, Murphy solely alleges that his attorney should have asked the court to conduct a more thorough *Boykin* colloquy. Murphy discusses at length why the trial court's *Boykin* colloquy was deficient, how the trial court's order denying his RCr 11.42 motion incorrectly stated the requirements of a proper guilty plea, and how the Court of Appeals also used the wrong standard, but he fails to identify

6

trial counsel's actions which rendered her performance deficient. On its face, Murphy's argument attempts to shoehorn an argument waived by failure to file a direct appeal—that Murphy's guilty plea was involuntary based on an improper *Boykin* colloquy—into a RCr 11.42 motion based on a *Strickland* claim.

While this Court has previously held that interplay exists between RCr 11.42 motions, *Strickland* claims, and potential involuntary guilty pleas, some deficient performance on behalf of counsel must exist for the claim to be viable. *Rank*, 494 S.W.3d at 481. In Murphy's case, trial counsel did not perform deficiently by not objecting to the trial court deeming Murphy's answers sufficient and by not asking the court to conduct a more thorough *Boykin* colloquy. The failure to conduct a proper *Boykin* colloquy is trial court error, not deficient performance by trial counsel, unless trial counsel's conduct somehow causes the trial court to conduct an improper colloquy. Under this set of facts, we see no basis to conclude trial counsel's actions were deficient.

Furthermore, even if trial counsel's conduct was deficient, Murphy still must prove that he was prejudiced as a result. Murphy was indicted on two counts: Sodomy, First Degree (victim under 12 years of age), a Class A felony and Sexual Abuse, First Degree (victim under 12 years of age), a Class C felony. KRS[4] 510.070; KRS 510.110. A Class A felony carries a twenty-year minimum term of imprisonment and a potential for life imprisonment. KRS 532.020. A

---

[4] Kentucky Revised Statutes.

Class C felony carries a minimum of five years and a maximum of ten years' imprisonment. *Id.* Per his plea agreement, the Sexual Abuse charge was dropped, and Murphy pled guilty to Sodomy, First Degree and received the **minimum sentence** of twenty years' imprisonment. Had Murphy elected to go to trial, the Commonwealth had ample evidence against him. First, he gave a statement confessing to his actions. Second, discovery records show that the Commonwealth had evidence of Murphy's DNA on the victim's underwear. No prejudice occurred in this case as any reasonable counsel would have instructed their client on the risks of going to trial when the Commonwealth has a confession and DNA evidence at its disposal. Moreover, Murphy received the minimum sentence for a Class A felony, something a jury may not have recommended had he been convicted at trial. Under the factual circumstances of this case, no prejudice occurred from counsel's alleged ineffective assistance. Therefore, we affirm the Court of Appeals analysis of Murphy's *Strickland* claim.

## IV. Analysis of a Proper *Boykin* Colloquy and Voluntary Pleas.

Since both the trial court and Court of Appeals offer differing, mistaken conclusions of what must occur for a plea to be voluntary, we write to clarify. First, the trial court in its order denying Murphy's RCr 11.42 motion held that "[t]he Defendant pled guilty, in open court. In Kentucky, nothing more is required." This is an incorrect pronouncement of what is required to show that a guilty plea is knowing, voluntary, and intelligent. This Court has consistently held that "[w]hile solemn declarations in open court carry a strong presumption

8

of verity, the validity of a guilty plea is not determined by reference to some magic incantation recited at the time it is taken." *Bronk*, 58 S.W.3d at 487 (citations and quotations omitted). *Boykin* also requires that a defendant "have a full understanding of what the plea connotes and its consequences." *Johnson v. Commonwealth*, 103 S.W.3d 687, 691 (Ky. 2003) (citations and quotations omitted). Accordingly, the trial court's belief that a defendant must merely state that he is guilty, "in open court," in order to make his guilty plea valid, is inaccurate.

Second, the Court of Appeals was incorrect to hold that Murphy's guilty plea was "intelligent and voluntary" because he signed a plea agreement which "expressly sets out his waiver of [his] constitutional right[s] and his acknowledgment that the plea was freely, knowingly, intelligently and voluntarily made." *Boykin* requires that a defendant must make "an affirmative showing that [the plea agreement] was intelligent and voluntary." 395 U.S. at 242, 89 S. Ct. at 1711. A signed agreement may be evidence of an intelligent and knowing guilty plea, however, a signed agreement does not automatically satisfy the "intelligent and voluntary" requirement. A *Boykin* colloquy is required.

Here, the KCPC report in the record listed Murphy's IQ at 64, with a diagnosis of mild mental retardation.[5] The KCPC report also indicated that

---

[5] Although we understand that the medical community no longer refers to intellectual disabilities using this term, the language used in the KCPC report observed that Murphy "suffers from mild intellectual disability (Mild Mental Retardation) based on his test findings and his adaptive behavior." "Mental retardation" and "intellectual disability" have been described by the United States

9

Murphy was functionally illiterate. Although the report opined that these factors did not render Murphy incompetent to stand trial or assist in his defense, the trial court should have acknowledged these issues and conducted a much more thorough colloquy.

A *Boykin* colloquy is designed to determine, through the totality of the circumstances, whether a defendant is voluntarily pleading guilty and understands what constitutional rights he is giving up. *Bronk*, 58 S.W.3d at 486. "It is good procedure, therefore, for a state judge to conduct a careful inquiry into the defendant's understanding of the nature and consequences of his plea. A **comprehensive on-the-record inquiry** into this matter 'forestalls the spin-off of collateral proceedings that seek to probe murky memories.'" *Roddy v. Black*, 516 F.2d 1380, 1384 (6th Cir. 1975) (emphasis added) (quoting *Boykin*, 395 U.S. at 244, 89 S. Ct. at 1713). Especially when the defendant is potentially disabled, a magic incantation of a few words in order to show that the defendant plead guilty on the record is insufficient.[6] *Id.* at 487. While the trial court's alleged errors regarding the colloquy are not before this Court—outside of their connection to Murphy's *Strickland* claim—as they were not

---

Supreme Court as "identical phenomenon." *Hall v. Florida*, 572 U.S. 701, 704, 134 S. Ct. 1986, 1990, 188 L. Ed. 2d. 1007 (2014). The change in terminology has been approved and adopted by psychiatrists and other experts in mental disorders. *Id.*

[6] While the trial court merely glossed over or failed to mention the specific constitutional rights Murphy waived during the *Boykin* colloquy, we note that the "[t]he failure to mention . . . specific rights . . . does not preclude a finding that [Murphy] voluntarily and intelligently entered his guilty plea." *United States v. Stead*, 746 F.2d 355, 357 (6th Cir. 1984); *see also Grigsby*, 302 S.W.3d at 56 ("*Boykin* does not require separate enumeration of each right waived. Rather, as long as a defendant has a full understanding of what the plea connotes and its consequences, it is valid[]") (citations and quotations omitted).

10

raised in a direct appeal, future trial courts should be on notice that a more thorough colloquy, particularly in the case of intellectually disabled defendants, should be conducted to ensure that a defendant's guilty plea is knowing, voluntary, and intelligent and complies with the structure set forth in *Boykin.*

## V.  Conclusion.

After a thorough review of the record, we affirm the decision of the Court of Appeals finding that the trial court did not err in denying Murphy's RCr 11.42 motion without an evidentiary hearing.  However, in doing so, we urge courts across this Commonwealth to conduct more thorough *Boykin* colloquies, especially with intellectually disabled defendants, to ensure that any guilty plea is entered knowingly, voluntarily, and intelligently.

Minton, C.J.; Buckingham, Hughes, Keller, VanMeter and Wright, JJ., sitting.  All concur.  Lambert, J., not sitting.

COUNSEL FOR APPELLANT:

Andrea Reed
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Julie Scott Jernigan
Assistant Attorney General

# Supreme Court of Kentucky

2018-SC-000281-DG

DAVID MURPHY                                                APPELLANT

ON REVIEW FROM COURT OF APPEALS
CASE NO. 2017-CA-000179-MR
V.          PULASKI CIRCUIT COURT NO. 14-CR-00405

COMMONWEALTH OF KENTUCKY                                    APPELLEE

## ORDER DENYING PETITION FOR REHEARING AND CORRECTING OPINION

The Petition for Rehearing, filed by the Appellant, of the Opinion of the Court, rendered August 29, 2019, is DENIED. The Opinion of the Court rendered August 29, 2019, is corrected by substitution of the attached Opinion in lieu of the original Opinion. Said correction does not affect the holding of the original Opinion of the Court.

The Court corrects said Opinion by changing footnote five to read as follows:

> Although we understand that the medical community no longer refers to intellectual disabilities using this term, the language used in the KCPC report observed that Murphy "suffers from mild intellectual disability (Mild Mental Retardation) based on his test findings and his adaptive behavior." "Mental retardation" and "intellectual disability" have been described by the United States Supreme Court as "identical phenomenon." *Hall v. Florida*, 572 U.S. 701, 704, 134 S. Ct. 1986, 1990, 188 L. Ed. 2d. 1007 (2014).

The change in terminology has been approved and adopted by psychiatrists and other experts in mental disorders. *Id.*

Minton, C.J.; Hughes, Keller, Nickell, VanMeter and Wright, JJ., sitting.

All concur. Lambert, J., not sitting.

ENTERED: February 20, 2020.

CHIEF JUSTICE

2