**Chris EMBRY, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee**

NO. 2014–CA–001666–MR

Court of Appeals of Kentucky.

RENDERED: NOVEMBER 13, 2015; 10:00 A.M.

---

Brief for Appellant: Rick Hardin, Hardinsburg, Kentucky.

Brief for Appellee: Jack Conway, Attorney General of Kentucky, Leilani K.M. Martin, Assistant Attorney General, Frankfort, Kentucky.

BEFORE: DIXON, NICKELL AND TAYLOR, JUDGES.

## OPINION

NICKELL, JUDGE:

Chris Embry appeals from an order entered by the Grayson Circuit Court denying a motion to vacate his conviction of three felony sex crimes against a minor. He claims counsel did not tell him his guilty plea would result in mandatory lifetime registration as a sex offender, even though the trial court twice advised him of that fact. We affirm.

## FACTS

On April 6, 2011, Embry was indicted on two counts of rape in the third degree,[1] two counts of sexual abuse in the first degree,[2] and two counts of sodomy in the third degree.[3] His victim, born August 7, 1994, was the teenage daughter of family friends he met through church. Embry, born October 26, 1974, was twenty years older. At arraignment, Embry pled not guilty and the matter was set for a jury trial.

On November 29, 2011, Embry executed a standard motion to enter guilty plea. On December 6, 2011, he appeared in open court and pled guilty to three Class D felonies—one count of rape in the third degree and two counts of sexual abuse in the first degree. The Commonwealth subsequently moved to dismiss the three other counts. The trial court found the plea to be knowingly, intelligently and voluntarily entered. Final sentence was withheld until completion of a pre-sentence investigation report (PSI).

Sentencing occurred on January 17, 2012. The PSI contained the following statement, "Embry will also be required to register his current address with the Kentucky State Police for the remainder of his life." A separate Comprehensive Sex Offender PSI included Embry's admission he engaged in fellatio and vaginal intercourse with the victim in June of 2010 with full knowledge of the victim's age. Embry acknowledged seeing both PSI's at sentencing and there is no indication he requested changes in either document.

Consistent with the Commonwealth's offer, Embry received three concurrent five-year sentences on each of the three felonies for a total sentence of five years, to be followed by a five-year period of conditional discharge. Additionally, Embry was prohibited from accepting a church or community organization role involving children or having unsupervised contact with anyone under age eighteen. Because anyone convicted of two or more felonies against a minor must register as a sex offender for life, KRS 17.520(2)(a)(4), Embry was required to register for life and complete the Sex Offender Treatment Program. The trial court orally informed Embry of these requirements at sentenc-

---

1. Kentucky Revised Statutes (KRS) 510.060, a Class D felony.

2. KRS 510.110, a Class D felony.

3. KRS 510.090, a Class D felony.

ing.[4] The Commonwealth's offer was generous out of concern for the wellbeing of the victim and her family, not because of any perceived weakness in its case.

On January 24, 2012, defense counsel filed a motion urging the trial court to make specific findings of fact, or amend the order entered on January 17, 2012, to explain its oral ruling that Embry "be required to be a lifetime registered sex offender as opposed to a 20/10 year registered sex offender."

On March 27, 2012, defense counsel moved for shock probation. The motion was heard and granted on April 17, 2012. The order, which Embry signed in open court, required Embry to "complete all sex offender treatment recommendations and all recommendations of plea agreement." Required lifetime registration was reiterated to Embry by the trial court during the hearing.

Between 2011 and January 9, 2014, the record provided to us shows no inkling of any problem with the guilty plea, the sentence imposed, or the lifetime registration requirement—save the one written request for clarification on January 24, 2012, a motion for which we see no response or resolution in the written record. The requested clarification may have been discussed when the shock probation motion was heard, but we see nothing designating that hearing for inclusion in the record. Under *Thompson*, we assume the omitted record supports the trial court's handling of the case.

No motion was made to withdraw the guilty plea before its entry. No motion was filed to vacate, set aside or correct the sentence after its entry. No appeal was filed. No complaint against counsel was voiced when Embry appeared at the hearing on shock probation. In other words, at no time did Embry allege mistake, misadvice, or misunderstanding until January 9, 2014—nearing closure of the three-year window for filing an RCr 11.42 motion—when, with new post-conviction counsel, Embry filed a motion to vacate[5] alleging (over his signature):

> [a]lthough, (sic) it is important to reassess the fact that [Embry] never knew there (sic) minimum sex offender registration was twenty (20) years because his attorney informed him that it was a ten (10) year registration. Therefore, but for his defense counsel's erroneous advice, [Embry] would have insisted on going to trial as he asserts by remedy afforded this (sic) motion.

In the motion, post-conviction counsel wrote:

> [t]he lifetime registration was definite, immediate, and automatic when [Embry] amended his plea from not guilty to guilty on December 6, 2011.

The Commonwealth responded to the motion stating the evidence against Embry—including numerous electronic messages between Embry and the victim describing their sexual activity—was "overwhelming" and Embry pled guilty because the Commonwealth and the victim's family agreed to shock probation.

Thereafter, the trial court set the motion to vacate for a hearing on February 4,

---

4. We make these statements based upon the trial court's order and the briefs as the appellate record contains no recordings of any court proceedings. Under *Commonwealth v. Thompson*, 697 S.W.2d 143, 145 (Ky.1985), we assume any omitted portion of the record supports the trial court's decision.

5. We found the organization of this pleading to be highly confusing. Apparently it is an attempt to create a verified motion by incorporating what might suffice as an affidavit from the defendant inside a motion prepared by counsel.

2014; April 1, 2014; April 15, 2014; May 6, 2014; June 3, 2014; and, July 1, 2014.[6] Finally, without an evidentiary hearing ever occurring, the matter was taken under submission on July 2, 2014. Hearing no testimony from the attorney who represented Embry on the guilty plea, and no specifics about the legal advice he actually gave, the only information the trial court had on which to rule was the motion to vacate signed by both Embry and post-conviction counsel.

On September 11, 2014, the Grayson Circuit Court denied Embry's RCr 11.42 motion in an eight-page order. On appeal, Embry maintains counsel provided ineffective assistance of counsel by not telling him he would be subject to lifetime registration as a sex offender. Upon review of the record, the briefs and the law, we affirm.

## ANALYSIS

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court promulgated a two-part showing for ineffective assistance of counsel claims. To justify relief due to attorney error, a movant must demonstrate: (1) counsel provided deficient assistance that (2) prejudiced the defense. *Id.*, 466 U.S. at 687, 104 S.Ct. 2052. Without both showings, there can be no relief. To prove prejudice in the context of a guilty plea, a movant must:

> demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Premo v. Moore*, 562 U.S. 115, 116–17, 131 S.Ct. 733, 737, 178 L.Ed.2d 649 (2011) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).

We review counsel's performance and any alleged deficiency *de novo*. *Brown v. Commonwealth*, 253 S.W.3d 490, 500 (Ky.2008). We defer to any findings of fact made by the trial court. *Logan v. Commonwealth*, 446 S.W.3d 655, 658–59 (Ky.App.2014). We "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Reviewing the record, we see defense counsel engaged in an active motion practice, moving for dismissal of the indictment and/or particular charges; filing multiple motions for discovery; moving to suppress items in a series of motions; and, to exclude other evidence *in limine*. Following a suppression hearing, the trial court granted a defense motion to suppress statements Embry had made to a detective, but denied a motion to suppress text messages, e-mails and Snapfish photos.

Under KRS 17.520(2)(a)(4), a person "convicted of two (2) or more felony criminal offenses against a victim who is a minor" must register as a sex offender for the duration of his life. Embry pled guilty to three felony sex crimes perpetrated upon a minor female. Without doubt, Embry was subject to lifetime registration as a sex offender as a result of the guilty plea.

The real question is whether counsel told Embry he would be subject to lifetime registration before entering the guilty plea and whether it matters. Embry claims counsel told him he would have to register for only a decade, but we have no *proof* of the legal advice counsel actually gave Embry and therein lies a huge problem. Embry's bare allegation is insufficient to *prove*

---

**6.** No explanation for the delays occurs in the record, just a series of one-sentence orders reassigning the hearing dates.

relief is justified. Despite being given six separate opportunities to offer evidence—which could have included placing counsel on the witness stand under oath—Embry did nothing.

■ On appeal, we must consider "the totality of evidence before the judge ... and assess the overall performance of counsel throughout the case ... to determine whether the identified acts or omissions overcome the presumption that counsel rendered reasonable professional assistance." *Foley v. Commonwealth*, 17 S.W.3d 878, 884 (Ky.2000), *as modified on denial of reh'g* (June 15, 2000), *overruled on other grounds by Stopher v. Conliffe*, 170 S.W.3d 307 (Ky.2005) (internal citations omitted). Because Embry offered no proof, we do not know whether counsel accurately advised him—but we presume he did. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. While counsel's words are conspicuously absent, according to the trial court's opinion, the court twice—during the sentencing hearing, and again during the shock probation hearing—personally told Embry he would be subject to lifetime registration. Thus, regardless of what counsel may or may not have told Embry, the trial court told him he would be required to register as a sex offender for the remainder of his life and the guilty plea went forward. Upon hearing this directive—which was inconsistent with the advice he now claims he received from counsel—Embry did not question the court about why he would have to register for life when his attorney had allegedly told him he would have to register for only one decade. This lack of concern and query on Embry's part at two points in time it would have made a significant difference is curious to us.

Furthermore, it is troubling that the trial court scheduled evidentiary hearings on six different dates, but no evidence was ever taken. Embry, who bore the burden of convincingly establishing "he was deprived of some substantial right which would justify the extraordinary relief afforded by the post-conviction proceedings provided in RCr 11.42[,]" failed to carry his burden. *Dorton v. Commonwealth*, 433 S.W.2d 117, 118 (Ky.1968). This scenario is akin to *Thompson*, 697 S.W.2d at 145, wherein we stated, "when the complete record is not before the appellate court, that court must assume that the omitted record supports the decision of the trial court." Granted, *Thompson* generally applies to situations where a portion of an existing record is not provided to the appellate court for review—something that applies to this case—the adage seems equally pertinent to another aspect of this scenario. Embry had six chances to prove his claim with testimony from the attorney he alleges gave him bad advice, but seized none of them and then urged the trial court to rule in his favor. Had Embry taken the stand and subjected himself to cross-examination, he may have provided at least a modicum of proof to substantiate his claim. However, submitting a motion to vacate, without more, simply will not satisfy the movant's burden under RCr 11.42. If it did, there would be little reason for hearings on such motions. Embry did not convince the trial court, nor has he convinced us, his attorney provided erroneous advice.

Embry bases his claim upon *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), holding counsel's failure to advise a criminal defendant of potential deportation resulting from conviction constitutes ineffective assistance of counsel under the Sixth Amendment. Prior to rendition of *Padilla*, a panel of this Court had held mandatory sex offender registration is a "purely collateral consequence" and counsel's failure to advise a

client of it does not render a guilty plea involuntary. *Carpenter v. Commonwealth,* 231 S.W.3d 134, 137–38 (Ky.App.2007). *Carpenter* has not been overturned or criticized.

This Court declined to extend the *Padilla* holding in *King v. Commonwealth,* 384 S.W.3d 193, 195 (Ky.App.2012), writing "*Padilla* is narrowly written to apply to the consequences of guilty pleas solely in the context of immigration, and we cannot expand its scope." However, on the strength of *Padilla,* the Supreme Court of Kentucky held failing to inform a defendant who qualifies as a violent offender of the longer period of parole ineligibility could constitute ineffective assistance of counsel. *Commonwealth v. Pridham,* 394 S.W.3d 867, 880–81 (Ky.2012). Our Supreme Court went on to direct, deciding whether *Padilla* extends to a particular scenario requires a determination of whether such a collateral consequence is "'like' deportation in [its] punitive effect, [its] severity, and [its] intimate relationship to the direct criminal penalties where the consequence is easily determined from a clear and explicit statute." *Id.* at 881–82.

While holding an ineffective assistance of counsel claim could apply to an attorney's failure to advise one who qualifies as a violent offender about parole ineligibility, the *Pridham* Court distinguished sex offender treatment, noting it is neither punishment nor penalty,

> [i]t is a rehabilitative measure the General Assembly has deemed important enough to make mandatory. As then-Judge, now Justice, Schroder observed for the Court of Appeals in *Garland v. Commonwealth,* 997 S.W.2d 487 (Ky. App.1999), the fact that sex offender treatment has been made a condition precedent to parole does not affect a defendant's underlying sentence and

does not enhance his punishment, even where the effect of the condition precedent is to delay his parole eligibility. *Id.* at 882. In reviewing Alaska's Sex Offender Registration Act, the United States Supreme Court wrote:

> [t]he fact that sex offender registration and notification statutes are of fairly recent origin suggests that the Act was not meant as a punitive measure, or, at least, that it did not involve a traditional means of punishing. Respondents' argument that the Act, particularly its notification provisions, resembles shaming punishments of the colonial period is unpersuasive. In contrast to those punishments, the Act's stigma results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public. The fact that Alaska posts offender information on the Internet does not alter this conclusion. Second, the Act does not subject respondents to an affirmative disability or restraint. It imposes no physical restraint, and so does not resemble imprisonment, the paradigmatic affirmative disability or restraint. Moreover, its obligations are less harsh than the sanctions of occupational debarment, which the Court has held to be nonpunitive.... [T]he record contains no evidence that the Act has led to substantial occupational or housing disadvantages for former sex offenders that would not have otherwise occurred.

*Smith v. Doe,* 538 U.S. 84, 86–87, 123 S.Ct. 1140, 1144, 155 L.Ed.2d 164 (2003) (internal citations omitted).

▆ Kentucky courts have pronounced our sex offender registration requirements are nonpunitive. In *Hyatt v. Commonwealth,* 72 S.W.3d 566, 573 (Ky.2002), our Supreme Court stated, "[t]he registration and notification required by [statute] are

nonpunitive and provide only the slightest inconvenience to the defendant, although they provide the overwhelming public policy objective of protecting the public." *See also McEntire v. Commonwealth*, 344 S.W.3d 125, 128–29 (Ky.App.2010) (holding sex offender registration does not constitute cruel and unusual punishment because it is a status; not a punishment). Lifetime registration being nonpunitive, failure to advise a criminal defendant he is subject to it is not an appropriate basis for relief under *Padilla* or RCr 11.42. Stated otherwise, failure to fully advise a defendant about lifetime registration does not rise to the level of deficient legal performance.

Just as Embry failed to demonstrate deficient legal performance by his attorney, he failed to convince the trial court he would have refused the Commonwealth's generous offer on a guilty plea and insisted on standing trial as required by *Hill.* Such a decision would have been irrational. Embry originally faced a total of twenty years. Under the plea, he received three concurrent five-year sentences for a total of five years, probated for five years after being confined for just ninety days. Evidence revealed during discovery, including voluminous pages of electronic messages exchanged between Embry and the victim mentioning Embry could be jailed for his actions with her, established he engaged in illegal sexual conduct with a girl under the age of sixteen. The girl had told police she had intercourse with Embry twice when she was fifteen, and between eight and eighteen times after her sixteenth birthday. During the guilty plea colloquy, Embry admitted he was guilty of the three amended charges. During preparation of the PSI, Embry corroborated the victim's account of knowing her three to four years before exercising poor judgment and engaging in fellatio and vaginal intercourse

with the girl....In light. of these facts, rejecting the Commonwealth's offer of five years, probated for five years after serving just ninety days to risk conviction by a jury with a maximum punishment of fifteen years, would have been a huge gamble a reasonable person would not take.

The trial court summarized the case well:

> [s]ince the court itself addressed the sex offender registration requirements at the bench at [Embry's] sentencing hearing, his decision to withdraw his plea could have been immediate. During the next thirty days he could have appealed the registration requirement if the Judgment was erroneous. At the very least, when he accepted the bargain and was granted shock probation ninety days later, [Embry] still willingly accepted same and raised no objection to the lifetime registration requirement. Having waited two years for memories to fade, potential witnesses to disappear and evidence to become stale, [Embry] now seeks to complain of his counsel's representation.

This appeal may best be described as too little, too late. To be sure, Embry created a difficult spot for himself—but it is a spot of his own making. Whether a jury convicted him or he pled guilty, once convicted of two felonies inflicted upon a minor he was subject to mandatory lifetime registration on the sex offender registry. KRS 17.520(2)(a)(4).

In sum we hold three things: a movant seeking RCr 11.42 relief must offer some proof of his claims to justify relief; bare allegations in the motion will not justify granting the extraordinary relief afforded by this rule. Flaws in counsel's advice may be cured by the trial court's provision

of accurate information. Finally, failure to advise a defendant of the lifetime registration requirement for a sex offender who pleads guilty does not constitute ineffective assistance of counsel because the registration requirement is nonpunitive and designed to protect the public.

Therefore, the order denying the RCr 11.42 motion is affirmed.

ALL CONCUR.