CORRECTED: JUNE 14, 2018
RENDERED: JUNE 14, 2018
TO BE PUBLISHED

$\mathfrak{Supreme\ Court\ of\ Kentucky}$ FINAL

DATE 7/6/18 Kim Redmon, DC

2016-SC-000365-DG

COMMONWEALTH OF KENTUCKY                                    APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                         CASE NO. 2014-CA-001318-MR
HARDIN CIRCUIT COURT NO. 10-CR-00433


KYLE D. THOMPSON                                             APPELLEE


**OPINION OF THE COURT BY JUSTICE HUGHES**

**AFFIRMING AND REMANDING**

In October 2011, Kyle D. Thompson pled guilty to second-degree
terroristic threatening, criminal attempt to commit kidnapping, unlawful
possession of a weapon on school property, third-degree terroristic threatening,
carrying a concealed deadly weapon, and possession of marijuana. For these
offenses, Thompson was sentenced to three years' imprisonment and upon
release five years' probation. After his release from prison, Thompson learned
that as a consequence of his guilty plea he was obligated to register under
Kentucky Revised Statute (KRS) 17.510 as a person who had committed sex

crimes or crimes against minors.[1]  Dissatisfied with the performance of his counsel, Thompson filed a Kentucky Rule of Criminal Procedure (RCr) 11.42 motion.  After the circuit court denied Thompson's motion without a hearing, he appealed to the Court of Appeals, which reversed the judgment of the circuit court and remanded Thompson's case to the circuit court.[2]  Having granted the Commonwealth's motion for discretionary review, we affirm the Court of Appeals' opinion and remand this case to the Hardin Circuit Court for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

During the fall of 2010, Thompson (who was at that time twenty-years-old) became enamored with Mindy,[3] a student at North Hardin High School.  On October 17, 2010, Mindy, who was concerned about Thompson's recent behavior towards her, contacted the police to inform them about information displayed on his Facebook page.  Thompson's Facebook page did not list his real name, but rather the name of a Texas mass murderer.  Additionally, Thompson's Facebook page featured a photograph of Thompson posing with a gun and included posts in which he made detailed threats to kill Mindy and

---

[1] The attempted kidnapping victim was a minor.

[2] It is unclear from the Court of Appeals' decision what action the circuit court was to take on remand.  As best we can discern, the Court of Appeals simply concluded that Thompson's counsel's failure to advise him about sex offender registration was ineffective assistance.  Under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), and *Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366 (1985), the circuit court would presumably still need to address whether Thompson was prejudiced by this failure.

[3] The name of the minor victim in this opinion has been replaced with a pseudonym to preserve her privacy.

her brother. The posts were highly specific, noting the number of shots he would take and where on his intended victims' bodies he would be aiming.

The following day, police received a tip from Thompson's stepfather that Thompson was headed to North Hardin High School and was armed. Multiple officers with the Vine Grove Police Department responded to the tip and confronted Thompson in the school's parking lot. Shortly after police intercepted Thompson, classes concluded for the day and students began to exit the school. A search of Thompson's car led to the recovery of a loaded gun in the unlocked console between the driver and passenger seats. Subsequently, Thompson was arrested and taken into custody.

In December 2010, Thompson was indicted by the Hardin County grand jury for criminal attempt to commit murder, criminal attempt to commit kidnapping, unlawful possession of a weapon on school property, third-degree terroristic threatening, carrying a concealed deadly weapon, and possession of marijuana. At Thompson's arraignment, a trial was scheduled for September 12, 2011. Afterwards, the circuit court conducted two hearings at Thompson's request regarding his competence to stand trial and his motion to suppress evidence. On August 31, 2011, the circuit court deemed Thompson competent to stand trial and denied his motion to suppress evidence obtained from a search of his vehicle as well as a statement he made to police.

The following day Thompson withdrew his not guilty plea and entered into a plea agreement with the Commonwealth. As part of his plea, the Commonwealth agreed to amend the charge of criminal attempt to commit

3

murder to second-degree terroristic threatening. For that amended charge the Commonwealth recommended a three-year prison sentence. As for Thompson's remaining charges, the Commonwealth recommended the following penalties: 1) criminal attempt to commit kidnapping – five years' probation; 2) unlawful possession of a weapon on school property – three years' imprisonment; 3) third-degree terroristic threatening – eight months' imprisonment; 4) carrying a concealed deadly weapon – nine months' imprisonment; and 5) possession of marijuana – thirty days' imprisonment. The plea agreement specified that these sentences were to run concurrently, with the exception of criminal attempt to commit kidnapping, which was to run consecutively. Accordingly, Thompson's recommended sentence was three years' imprisonment to be followed upon release by five years' probation.

Prior to sentencing, Thompson indicated by letter to the circuit court that he wished to withdraw his guilty plea. However, at the October 11, 2011 sentencing hearing, Thompson had again changed his mind and stated that he wanted to proceed with the sentencing as planned. The circuit court sentenced Thompson in conformance with the plea agreement.

Two years later, in October 2013, Thompson filed a motion requesting that the circuit court remove him from the "Sexual Offender Registry and vacate any future requirements for him to submit to registering."[4] Thompson

---

[4] Thompson's motion did not identify a provision of the Kentucky Rules of Criminal Procedure or Kentucky Rules of Civil Procedure (CR) through which he sought relief. It was a single-sentence motion and cited no caselaw.

4

argued that he was unaware at the time of his plea that, as a consequence of pleading guilty to criminal attempt to commit kidnapping of a minor victim, he would be obligated to register as a sex offender under KRS 17.510. The motion did not reference RCr 11.42 or mention ineffective assistance of counsel. At a hearing on Thompson's barebones motion, his counsel at the time of the plea testified that neither he nor the prosecutor had believed that Thompson's plea mandated sex offender registration.

The circuit court denied Thompson's motion, concluding that while the plea agreement and the judgment were silent as to the requirement of sex offender registration, the "[f]ailure to advise of the registration requirement is arguably not grounds for relief pursuant to RCr 11.42." The circuit court further explained that "[g]iven the strong preference in Kentucky law for the finality of judgments, the only way to consider any further relief would be by way of an agreed order pursuant to CR 60.02, with the Commonwealth considering the input of the victim for such a request." Based on this reasoning, the circuit court denied Thompson's motion without prejudice.

Several months later, in June 2014, Thompson filed a motion to vacate, set aside, or correct sentence pursuant to RCr 11.42. Thompson claimed that counsel had never discussed the sex offender registration requirement with him and that "[h]ad he known of the requirement that he register as a sex offender pursuant to KRS 17.510, he would not have accepted the Commonwealth's Offer on a Guilty Plea, and instead would have rejected the plea offer and insisted on proceeding to trial."

5

In July 2014, the circuit court entered an order denying Thompson's RCr 11.42 motion without a hearing. The circuit court found that Thompson's attorney did not inform his client of the post-conviction registration requirement. The circuit court concluded that Thompson's counsel should have advised his client about registration, and the circuit court should have included registration notification in the sentencing order. Nevertheless, the court held that these failures did not warrant action under RCr 11.42.

The circuit court offered three separate reasons for denying Thompson's motion. First, Thompson did not appeal from the October 2013 denial of his barebones motion seeking removal from the sex offender registry. Second, in the circuit court's view, counsel's failure to inform Thompson about the registration duty was not ineffective assistance. Relying on *Carpenter v. Commonwealth*, 231 S.W.3d 134 (Ky. App. 2007) and *Commonwealth v. Pridham*, 394 S.W.3d 867 (Ky. 2012), the circuit court concluded that the registration requirement is a collateral consequence of a guilty plea and as such does not implicate the constitutionality of a guilty plea or counsel's effectiveness.

Finally, the circuit court determined that even if the failure to advise Thompson regarding registration was ineffective representation, Thompson could not show "actual prejudice from counsel's actions." The court explained that due to the evidentiary hearing on Thompson's suppression motion,

> [t]he file contains a considerable amount of evidence about the charges. The evidence of guilt against Thompson was compelling, and he has not alleged any meaningful defense. His competency and criminal responsibility were both evaluated, and no defense

6

was found on any mental condition grounds. Thompson has provided nothing to show that acquittal was likely.

The circuit court noted that Thompson faced a considerably longer sentence of decades had a jury convicted him of the original attempted murder charge, and even without that charge, he faced a potential fifteen-year sentence. Further, the circuit court concluded that "[t]he choice between this probable outcome and the outcome promised by his plea deal was a meaningful one. Thompson cannot establish actual prejudice from the alleged ineffective representation of his counsel. A decision by Thompson to proceed to trial because of the registration issue would not have been rational." Based on this reasoning, the circuit court denied Thompson's motion to vacate, set aside, or correct sentence under RCr 11.42.

In a unanimous decision,[5] the Court of Appeals reversed the circuit court's denial of Thompson's post-conviction motion. The Court of Appeals concluded that Thompson was denied effective assistance of counsel when counsel failed to inform him that as part of his plea he would be required to register as a sex offender. The Court of Appeals remanded the case, although it did not articulate the nature of any further proceedings in the circuit court. On the Commonwealth's motion, we granted discretionary review to evaluate whether Thompson's counsel provided ineffective assistance when he failed to inform Thompson of the statutory duty to register.

---

[5] Although the other two members of the appellate panel agreed with the outcome reached by the judge who wrote the opinion, they both concurred in result only.

## ANALYSIS

### I. *Strickland* Test for Ineffective Assistance of Counsel

Thompson's allegations of ineffective assistance of counsel are evaluated under the standard promulgated by the United States Supreme Court in *Strickland*, as modified by *Hill v. Lockhart*, 474 U.S. at 52, in those cases where the defendant opts to plead guilty rather than go to trial. To establish ineffective assistance of counsel in the context of a guilty plea, "[t]he movant must demonstrate that: (1) defense counsel's performance fell outside the wide range of professionally competent assistance; and that (2) a reasonable probability exists that, but for the deficient performance of counsel, the movant would not have pled guilty, but would have insisted on going to trial." *Commonwealth v. Rank*, 494 S.W.3d 476, 481 (Ky. 2016).

"When faced with an ineffective assistance of counsel claim in an RCr 11.42 appeal, a reviewing court first presumes that counsel's performance was reasonable." *Commonwealth v. McGorman*, 489 S.W.3d 731, 736 (Ky. 2016) (citing *Commonwealth v. Bussell*, 226 S.W.3d 96, 103 (Ky. 2007)). The reviewing court is then obligated to "consider the totality of the circumstances surrounding the guilty plea and juxtapose the presumption of voluntariness inherent in a proper plea colloquy with a *Strickland v. Washington* inquiry into the performance of counsel[.]" *Rank*, 494 S.W.3d at 481 (quoting *Bronk v. Commonwealth*, 58 S.W.3d 482, 486 (Ky. 2001)). The factual findings of the circuit court and determinations of witness credibility are reviewed only for

8

clear error, while the application of legal standards and precedents is reviewed *de novo. Brown v. Commonwealth,* 253 S.W.3d 490, 500 (Ky. 2008).

## II. Thompson's Claims are Not Procedurally Barred.

The Commonwealth argues that the Court of Appeals erred by failing to conclude that Thompson's claims were procedurally barred. The crux of the Commonwealth's argument is that the registration issue that is the subject of this appeal was previously raised in Thompson's 2013 "Motion to Be Removed from the Sexual Offender Registry." The Commonwealth insists that the order denying Thompson's motion should have been appealed, and that his failure to do so bars his later RCr 11.42 motion. In response, Thompson notes that because the circuit court denied his initial motion without prejudice there was no final and appealable order, and he was entitled to raise this issue in a later RCr 11.42 motion.

Regardless of whether Thompson's initial, barebones motion to be removed from the sex offender registry was denied with or without prejudice, it would not bar his current ineffective assistance of counsel claims. Thompson's initial motion to be removed from the sex offender registry was a simple request to be relieved of the statutory registration requirement, something the circuit court was not authorized to do. The motion was not identified by reference to a particular rule of criminal procedure, and we do not construe it to be an RCr 11.42 motion alleging ineffective assistance of counsel. As such, the RCr 11.42 claim which forms the basis for this appeal was permissible as it is not a successive motion. *See Fraser v. Commonwealth,* 59 S.W.3d 448, 454 (Ky.

9

2001) (citing RCr 11.42(3); *Butler v. Commonwealth,* 473 S.W.2d 108, 109 (Ky. 1971)). Accordingly, Thompson's RCr 11.42 claim is properly before this Court for review.

### III. Kentucky's Sex Offender Registration System is a Nonpunitive Measure Rationally Related to the Protection of Public Safety.

In 1994, in response to public outcry regarding the abduction and sexual abuse of minors, Congress adopted the Jacob Wetterling Crimes Against Children and Sexually Violent Offenders Registration Act. *Hyatt v. Commonwealth,* 72 S.W.3d 566, 569 (Ky. 2002). As part of the Act, Congress encouraged states to pass sex offender registration statutes, with the explicit threat that failure to do so could result in a ten percent reduction in funding the state would normally receive under 42 U.S.C. § 3765, the Omnibus Crime Control and Safe Streets Act of 1968. *Id.* In response, Kentucky adopted later that year a sex offender registration statute which was codified at KRS 17.500-540. *Id.* Subsequently, KRS 17.500-540 was amended by the legislature in 1998 and 2000. *Id.* at 570.

In 2002, this Court unanimously determined that Kentucky's sex offender registration statute was constitutionally valid. *Id.* at 580. In reaching this conclusion, the Court noted "that the designation of sexual predator is not a sentence or a punishment but simply a status resulting from a conviction of a sex crime." *Id.* at 572. Further, the Court explained that "[t]he Kentucky 1998 and 2000 Sex Offender Registration Statutes are directly related to the

nonpunitive goals of protecting the safety of the public. The statutes in question do not amount to a separate punishment based on past crimes." *Id.*

Eight years later in *Buck v. Commonwealth*, 308 S.W.3d 661, 662 (Ky. 2010), this Court was asked to reconsider *Hyatt* in light of the 2006 amendments to the Kentucky Sex Offender Registration Act (SORA). We declined to depart from our holding in *Hyatt*. In rejecting Buck's constitutional challenge to SORA, Justice Schroder, writing for a unanimous Court, stated:

> Analyzing SORA and its 2006 amendments in light of what it requires from the registrant, we continue to believe that SORA is a remedial measure with a rational connection to the nonpunitive goal of protection of public safety, and we see no reason to depart from our holding in *Hyatt*. Buck has demonstrated nothing in the 2006 amendments to SORA drastic enough to render SORA punitive.

*Id.* at 667-68.

After considering the post-2006 revisions to the Kentucky sex offender registration system, we reaffirm our prior holdings in *Hyatt* and *Buck* that the system remains a nonpunitive measure designed for the protection of the public. In so doing we concur with the vast majority of courts that have similarly concluded that by enacting sex offender registration statutes, legislatures sought to create a "civil, nonpunitive regulatory scheme." *Slansky v. Nebraska State Patrol*, 685 N.W.2d 335, 352 (Neb. 2004) (collecting cases); *see also Smith v. Doe*, 538 U.S. 84, 96, 123 S. Ct. 1140, 1149 (2003) (concluding that a similar Alaska sex offender registration statute was not punitive, but rather civil in nature). Simultaneously, we recognize that sex offender registration has

11

significant, lifelong consequences for the registrant, which brings us to the crux of this case, namely whether effective representation of counsel includes being informed of the mandatory sex offender registration required by statute.

## IV. The Direct/Collateral Distinction Remains Viable in Assessing Ineffective Assistance Claims But Is Not Always Well-Suited to Every Particular Form of Alleged Ineffective Assistance.

Relying on two Court of Appeals' cases discussed below, the circuit court concluded that Thompson could not establish ineffective assistance of counsel because sex offender registration was a collateral consequence of his guilty plea. Recognizing that our Court of Appeals and the courts of other states have focused on that approach, we address the concept briefly even though we ultimately conclude that the distinction is not dispositive of the ineffective assistance claim presented.

The Due Process Clause of the Fourteenth Amendment mandates that any guilty plea be made voluntarily and intelligently. *Edmonds v. Commonwealth*, 189 S.W.3d 558, 565 (Ky. 2006) (citing *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711 (1969)). As the Supreme Court has explained, a plea includes the simultaneous waiver of "several constitutional rights, including [the defendant's] privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.'"

12

*Boykin,* 395 U.S. at 243 n.5 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 1073 (1938)).

Furthermore, it is mandatory that the defendant entering into a plea agreement have knowledge of the "relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970).[6] Yet, "[t]he defendant need only be aware of the direct consequences of the plea . . . the trial court is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea." *King v. Dutton,* 17 F.3d 151, 153 (6th Cir. 1994) (citing *Brown v. Perini,* 718 F.2d 784, 788–89 (6th Cir. 1983)). In distinguishing between what constitutes a "direct" or "collateral" consequence of a plea, the result "turns on whether the result represents a definite, immediate and largely automatic effect

_____

[6] *Brady* is generally considered the origin of the direct/collateral consequence distinction. The Supreme Court adopted the following standard as to the voluntariness of a guilty plea:

> "[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats . . ., misrepresentation . . ., or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes)."

*Id.* at 760 (citation omitted) (emphasis supplied). As two leading commentators have noted: "The collateral consequences rule is based in large part on the *Brady* Court's implication that a trial court need advise a defendant only of direct consequences to render a plea voluntary under the Due Process Clause." Chin and Holmes, *Effective Assistance of Counsel and the Consequences of Guilty Pleas,* 87 Cornell L. Rev. 697, 726 (2002). "The Court's other decisions regarding guilty pleas also make clear that counsel's duty of adequate representation is independent of the trial court's duty to make sure that the plea is voluntary." *Id.* at 729.

on the range of the defendant's punishment." *Cuthrell v. Dir. Patuxent Inst.*, 475 F.2d 1364, 1366 (4th Cir. 1973).

Prior to 2010, this Court, along with virtually every other state and federal appellate court,[7] considered deportation a collateral consequence of a plea (and so failure to advise could not be ineffective assistance), but the Supreme Court rejected this view in *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473 (2010). In *Padilla*, the Supreme Court held that counsel's alleged inaccurate advice to his non-citizen client that his guilty plea would not impact his immigration status, when in fact the plea would mean almost certain deportation, constituted deficient performance under *Strickland*. *Id.* at 374. The *Padilla* Court explained that it had "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland*." *Id.* at 365. Further, the Supreme Court concluded that due to "[deportation's] close connection to the criminal process [it is] uniquely difficult to classify as either a direct or a collateral consequence." *Id.* at 366.

While the Supreme Court determined that the failure to advise on immigration consequences could violate the Sixth Amendment, and that the collateral versus direct distinction was ill-suited to the disposition of Padilla's claims, the *Padilla* Court did not "eschew the direct-collateral divide across the board." *Chaidez*, 568 U.S. at 355, 133 S. Ct. at 1112. In *Chaidez*, Justice

---

[7] *See Chaidez v. United States*, 568 U.S. 342, 350-51, 133 S. Ct. 1103, 1109 (2013).

14

Kagan, addressing the retroactivity of *Padilla* for the majority, noted that in *Padilla* "[o]ur first order of business was . . . to consider whether the widely accepted distinction between direct and collateral consequences categorically foreclosed Padilla's claim, whatever the level of his attorney's performance." *Id.* She noted that the Court relied on the special nature of deportation — severe and automatic — in proceeding to the two-part *Strickland* test for ineffective assistance of counsel, even though all federal circuit courts and almost thirty state courts would not apply *Strickland* to "deportation risks or other collateral consequences of a guilty plea." *Id.* at 351.

Subsequent to *Padilla,* this Court, like courts across the country, has interpreted that case not as nullifying the direct and collateral consequence distinction altogether, but rather clarifying that deportation may not be treated as a collateral consequence of a plea. *See, e.g., Stiger v. Commonwealth,* 381 S.W.3d 230, 235 (Ky. 2012) (reiterating that a defendant's parole eligibility is not a direct consequence of a guilty plea and as such a lack of knowledge of same does not render a plea involuntary). We have also recognized that, as in *Padilla,* severe and definite consequences implicating effective assistance of counsel may be ill-suited to classification as either direct or collateral but should be addressed in a *Padilla*-type analysis. *Pridham,* 394 S.W.3d at 867.

The Commonwealth invokes the direct/collateral rule in this case and contends that registration is a collateral consequence; as noted, the circuit court and our Court of Appeals have accepted this argument, as have courts in other states. *See Magyar v. State,* 18 So. 3d 807, 812 (Miss. 2009) (collecting

15

cases from twenty other states). This characterization remains widespread, even after *Padilla*. *See, e.g., People v. Gravino*, 928 N.E.2d 1048, 1049 (N.Y. 2010) (holding that sex offender registration is a collateral rather than direct consequence of a guilty plea, and as such "registration and the terms and conditions of probation are not subjects that a trial court must address at the plea hearing"); *Ward v. State*, 315 S.W.3d 461, 464 (Tenn. 2010) ("[T]rial court was not required to advise the defendant of the requirement of sex offender registration because it is a remedial and regulatory measure, and therefore a collateral consequence of the guilty plea.").

Although the direct/collateral analysis survives *Padilla*, we are not persuaded that it is well-suited to addressing the issue of counsel's responsibility for making a client aware of mandatory sex offender registration, just as it was not well-suited to addressing counsel's responsibility for informing a client of the severe and automatic penalty of deportation. *Padilla*, 559 U.S. at 365-66. Indeed, given the automatic, serious and lifelong consequences of registration — consequences readily discernible by reading the SORA statute — we conclude that effective assistance of counsel pursuant to the Sixth Amendment requires informing a defendant about the fact of mandatory sex offender registration and what that entails.

## V. Counsel's Failure to Advise a Client of the Sex Offender Registration Requirement Constitutes Deficient Performance.

The Sixth Amendment "responsibilities of counsel to advise of the advantages and disadvantages of a guilty plea are greater than the

16

responsibilities of a court under the Fifth Amendment." *United States v. Youngs*, 687 F.3d 56, 62 (2d Cir. 2012) (citing *Libretti v. United States*, 516 U.S. 29, 50-51, 116 S. Ct. 356 (1995)). This key distinction was recently addressed by this Court in *Pridham*, where a defendant claimed that he had received incorrect advice regarding his parole eligibility. 394 S.W.3d at 871. Pridham had been instructed by counsel that as a result of his guilty plea "[he] would be eligible for parole after six years of his thirty-year sentence instead of the twenty-year period of ineligibility in fact imposed by the violent offender statute . . . ." *Id.* at 878.

On review, we explained that "[a]lthough this additional 'penalty' is hardly as severe as the 'penalty' of deportation, . . . the sharply extended period of parole ineligibility is a serious enough and certain enough detriment that a person pleading guilty is entitled to know about it." *Id.* Continuing, we stated that parole eligibility "is a detriment that applies automatically upon conviction of one of the statutory offenses, and while parole, technically, is not within the sentencing court's authority, the parole consequence here is legally inseparable from the conviction and sentence over which the trial court does preside." *Id.* Further, we analogized Pridham's situation to that of Padilla, because "[j]ust as '[t]he consequences of Padilla's plea could easily be determined from reading the removal statute,' the parole eligibility consequences of Pridham's plea could easily be determined by reading the violent offender statute." *Id.* (quoting *Padilla*, 559 U.S. at 537).

17

Despite parole eligibility being universally regarded as a collateral consequence of a guilty plea, this Court remanded Pridham's case for an evidentiary hearing on his *Strickland* claim. The Court opined that it was not "unreasonable to expect of competent defense counsel an awareness of the violent offender statute and accurate advice concerning its effect on parole eligibility." *Id.* at 879. To be clear the Court did not assess the merits of Pridham's claim, or its likelihood of success on remand, but rather determined that he simply be given "an opportunity to prove that counsel misadvised him as alleged and that absent the misadvice there is a reasonable probability he would have insisted upon a trial." *Id.*

Turning to the case at bar, it is clear that Thompson's circumstances are substantially similar to those addressed in *Pridham*. Sex offender registration, like the violent offender statute, is codified and can be understood by reading the relevant Kentucky Revised Statute. Additionally, while perhaps not as dire as deportation, registering as a sex offender carries serious, potentially lifelong, consequences which are the inseparable result of Thompson's conviction of criminal attempt to commit kidnapping of a minor.[8] Based on our prior reasoning in *Pridham*, we hold that Thompson was entitled to effective

---

[8] Registration is not simply registration of one's name and address. Among other things, a registrant must register fingerprints, DNA and a photograph with the local probation and parole office; must provide and regularly update his residential address and all electronic mail and social media identities/addresses; cannot reside within a thousand feet of a school, preschool, publicly owned playground or licensed day care facility; and cannot even be on any of those premises without prior written permission pursuant to statute. Violations of the registration statute can be a Class C or D felony. *See* KRS 17.510 and .545.

18

assistance of counsel in understanding this significant, definite, and automatic (by virtue of a state statute) consequence of his plea.[9]

In opposition to the conclusion we reach in this case, the Commonwealth cites two Kentucky Court of Appeals' decisions, *Carpenter*, 231 S.W.3d at 134, and *Embry v. Commonwealth*, 476 S.W.3d 264 (Ky. App. 2015). *Embry* bears some similarity to the case at bar, as it too concerned an allegation of ineffective assistance of counsel due to counsel's alleged failure to advise his client that he would be required as part of a plea to register as a sex offender for life. Factually, the cases are dissimilar given that Embry was explicitly informed by the circuit court that he would be required to register as a sex offender for life (whereas counsel allegedly informed him that he would have to register for ten years) as opposed to Thompson who was not informed of the registration requirement by either the circuit court or his counsel. Ultimately,

---

[9] Our holding is distinguishable from the situation presented in *Pridham*'s companion case – *Cox v. Commonwealth*, 394 S.W.3d at 867. Cox pled guilty to felony sex abuse and was informed by counsel that he would be a "sex offender" subject to several statutory requirements including a sex offender treatment program. *Id.* at 881. As such, Cox had the benefit of advice concerning his plea that Thompson never received. Later, Cox alleged ineffective assistance of counsel, contending that his counsel failed to advise him how his mandatory sex offender treatment intersected with his parole eligibility. *Id.* In denying his claim, this Court, in a unanimous opinion, explained that sex offender treatment is not a punishment, but rather a rehabilitative measure. *Id.* at 882. Additionally, the Court noted that a brief deferral in parole eligibility due to the necessity of completing sex offender treatment was not severe and its impact varied depending on a number of factors which could not be ascertained at the time of sentencing. *Id.* We disagree with the Commonwealth that our treatment of Cox's claims should result in a similar outcome in the case at bar. Sex offender registration differs from sex offender treatment, in that the latter is principally a rehabilitative measure, whereas the former is more concerned with public safety. Further, while factors concerning sex offender treatment may be unknown at the time of sentencing, sex offender registration requirements are readily identifiable given that registration is governed strictly by statute.

19

the *Embry* Court concluded that because lifetime sex offender registration is nonpunitive "failure to advise a criminal defendant he is subject to it is not an appropriate basis for relief under *Padilla* or RCr 11.42. Stated otherwise, failure to fully advise a defendant about lifetime registration does not rise to the level of deficient legal performance." *Embry*, 476 S.W.3d at 270.

Based on *Padilla* and *Pridham*, we disagree with the *Embry* court's bar on claims of ineffective assistance of counsel concerning sex offender registration. This serious and automatic consequence of a plea to certain charges can "easily be determined by reading . . . the statute," *Pridham*, 394 S.W.3d at 878 (quoting *Padilla*, 559 U.S. at 537), and is a matter that competent counsel would and should discuss with his client. Accordingly, we overrule *Embry* to the extent it holds otherwise. Similarly, we overrule that portion of *Carpenter*, 231 S.W.3d at 137, which holds that failure to inform a defendant contemplating a plea about the registration requirement does not implicate counsel's effectiveness.

Our conclusion that a defendant has a right to effective assistance of counsel concerning the requirement to register as a sex offender finds support from many of our sister state courts that have considered this issue.[10] *See*

---

[10] However, we do note that this view is not uniform as some states have concluded that counsel's failure to inform the client of sex offender registration cannot be ineffective assistance. *See, e.g., State v. Trotter*, 330 P.3d 1267, 1269 (Utah 2014) (As sex offender registration is a collateral consequence of a guilty plea, "neither defense counsel nor the trial court is constitutionally compelled to inform a defendant of the registration requirement before a guilty plea may be accepted as knowing and voluntary."); *Taylor v. State*, 887 N.W.2d 821, 826 (Minn. 2016) (holding "that a defense attorney's failure to advise a defendant about predatory-offender-registration

*State v. Trammell*, 387 P.3d 220, 227 (N.M. 2016) (holding that "[a] defense attorney's failure to advise a defendant entering into a plea which requires [sex offender] registration of that consequence is per se deficient performance under *Strickland*'s first prong"); *Taylor v. State*, 698 S.E.2d 384, 388 (Ga. 2010) (explaining that "even if registration as a sex offender is a collateral consequence of a guilty plea, the failure to advise a client that his guilty plea will require registration is constitutionally deficient performance"); *People v. Fonville*, 804 N.W.2d 878, 894-95 (Mich. App. 2011) (concluding that "defense counsel must advise a defendant that registration as a sexual offender is a consequence of the defendant's guilty plea").

Having considered the prior decisions of this Court and the views of other state courts, we conclude that the failure to advise Thompson of his statutory obligation to register as a sex offender falls short of what the Sixth Amendment requires of counsel. When we consider the effectiveness of counsel pursuant to the Sixth Amendment, we assess whether counsel's performance was objectively reasonable as measured by the prevailing professional norms. While it is obvious that no attorney could anticipate all of the myriad consequences of a guilty plea, where, as here, a particular consequence is sufficiently serious, definite, and automatic (it can readily be determined by

requirements before the defendant enters a guilty plea does not violate a defendant's right[] to [] effective assistance of counsel").

21

reviewing a controlling state statute), effective assistance entails informing the client of that consequence.

## VI. The Circuit Court Must Evaluate Whether Thompson's Counsel's Deficient Performance Caused Him Prejudice.

While it is uncontradicted that Thompson's counsel failed to inform his client about the sex offender registration requirement, this alone is insufficient to establish ineffective assistance of counsel warranting rescission of his guilty plea. Rather, Thompson is required to establish that a reasonable probability exists, that had he been aware of the requirement to register as a sex offender, that he would have rejected the Commonwealth's offer and insisted on going to trial, *i.e.*, that he suffered actual prejudice as a result of counsel's failure to inform him of the registration obligation. *Rank*, 494 S.W.3d at 481. To demonstrate that he was prejudiced, conclusory allegations are insufficient. Instead, Thompson "must allege facts that, if proven, would support a conclusion that the decision to reject the plea bargain and go to trial would have been rational, *e.g.*, valid defenses, a pending suppression motion that could undermine the prosecution's case, or the realistic potential for a lower sentence." *Stiger*, 381 S.W.3d at 237.

Despite having concluded that Thompson failed to show ineffective assistance from his counsel, the circuit court opined that assuming *arguendo* the failure to advise of the registration requirement had been ineffective assistance there was no resulting prejudice in this case. This particular portion of the order denying RCr 11.24 relief was not addressed by

22

the Court of Appeals. Given that court's conclusion that Thompson received ineffective assistance, the second prong of the *Strickland* analysis — whether there was resulting prejudice — was relevant. Perhaps consideration of that issue was what prompted the remand to the circuit court. In any event, under these circumstances, we believe the better approach is to remand the case to the circuit court for consideration of the prejudice prong of the *Strickland/Hill v. Lockhart* analysis now that it is essential to the disposition of this case. In remanding, we do not express any opinion on the circuit court's initial "assuming *arguendo*" prejudice analysis but trust that the experienced trial judge will proceed in accordance with our precedent.

Finally, the Commonwealth has emphasized that shortly after Thompson filed his RCr 11.42 motion and before the circuit court ruled, Thompson was arrested on charges of murder and first-degree assault. In *Thompson v. Commonwealth*, 2015-SC-000245-MR, WL 5239680 (Ky. Sept. 22, 2016), this Court affirmed his conviction following a jury trial of first-degree murder, first-degree assault (three counts), first-degree fleeing or evading, terroristic threatening and of being a second-degree persistent felony offender. Thompson received a life sentence. We deem it appropriate to note that this subsequent conviction is of no consequence in the prejudice analysis that the circuit court is charged with on remand. In *Hill v. Lockhart*, 474 U.S. at 59, the United States Supreme Court emphasized that the second prong of the analysis is whether there is "a reasonable probability that, but for counsel's errors, [defendant] would not have pleaded guilty and would have insisted on going to

23

trial." This analysis necessarily assesses the facts known and the decision made at the time of the plea, not later events including later convictions of different crimes.

## CONCLUSION

For the foregoing reasons, the opinion of the Court of Appeals is affirmed and this case is remanded to the circuit court for proceedings consistent with this Opinion.

Minton, C.J.; Cunningham, Keller, and Venters, JJ., concur. VanMeter, J., concurs in part and dissents in part by separate opinion in which Wright, J., joins.

VANMETER, J., CONCURRING IN PART AND DISSENTING IN PART: I respectfully concur in part and dissent in part. I concur with so much of the majority opinion as holds that trial counsel's failure to advise Thompson of the sex offender registration was deficient performance. I dissent, however, with so much of the opinion as remands to the Hardin Circuit Court for another determination as to whether this deficiency caused Thompson prejudice. My reading of the trial court's order denying Thompson's RCr 11.42 motion is that the trial court clearly and unequivocally found that "even if the failure to advise was ineffective representation, Thompson has not and cannot show actual prejudice from counsel's actions." On this point, in its order denying, the trial court stated:

> Assuming, *arguendo*, that counsel was ineffective under an improperly broad application of *Padilla*, Thompson cannot prove any resulting prejudice. A valid guilty plea must represent a meaningful choice between the probable outcome at trial and the

24

more certain outcome offered by the plea agreement. *Vaughn v. Commonwealth*, 258 S.W.3d 435, 439 (Ky. App. 2008). Even when *Padilla* applies, a defendant must show that a decision to proceed to trial in spite of the risk . . . must be rational.

In this case, an evidentiary hearing was conducted on a suppression motion. The file contains a considerable amount of evidence about the charges. The evidence of guilt against Thompson was compelling, and he has not alleged any meaningful defense. His competency and criminal responsibility were both evaluated, and no defense was found on any mental condition grounds. Thompson has provided nothing to show acquittal was likely.

Thompson was accused of repeatedly making written threats to a minor and members of her family, indicating that he would kill them. Thompson's own stepfather called the police and the minor's mother to ensure the safety of the minor. Thompson was then located in the parking lot of a local high school with a loaded firearm, waiting for the minor. Thompson faced a considerably longer sentence of decades had a jury convicted him of the original attempted murder charge. Even without that charge, he could have received a sentence of fifteen years to serve.

The choice between this probable outcome and the outcome promised by his plea deal was a meaningful one. Thompson cannot establish actual prejudice from the alleged ineffective representation of his counsel. A decision by Thompson to proceed to trial because of the registration issue would not have been rational. Thompson is not entitled to relief pursuant to RCr 11.42.

In my view, the trial court comprehensively and accurately addressed the prejudice issue, notwithstanding its use of the word "arguendo," that a decision by Thompson to go to trial under the circumstances would not have been rational. *Padilla*, 559 U.S. at 372, 130 S. Ct. at 1485; *Stiger*, 381 S.W.3d at 237. I would affirm the Hardin Circuit Court's order denying Thompson's RCr 11.42 motion.

Wright, J., joins.

COUNSEL FOR APPELLANT:

Andy Beshear
Attorney General of Kentucky

Kenneth Wayne Riggs
Mark Daniel Barry
Assistant Attorney General
Office of Criminal Appeals

COUNSEL FOR APPELLEE:

Robert C. Bishop

# Supreme Court of Kentucky

## 2016-SC-000365-DG

COMMONWEALTH OF KENTUCKY        APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.        CASE NO. 2014-CA-001318-MR
HARDIN CIRCUIT COURT NO. 10-CR-00433

KYLE D. THOMPSON        APPELLEE

### ORDER OF CORRECTION

The Opinion of the Court by Justice Hughes, rendered June 14, 2018, is CORRECTED to reflect the vote of the Court as: "Minton, C.J.; Cunningham, Keller, and Venters, JJ., concur. VanMeter, J., concurs in part and dissents in part by separate opinion in which Wright, J., joins. The original Opinion is replaced in its entirety by the attached corrected Opinion. The correction does not affect the holding of the original Opinion rendered by the Court.

ENTERED: June 14, 2018.



CHIEF JUSTICE